994 A.2d 928

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Lorin Henry BLEECKER.

Misc. AG No. 27, Sept. Term, 2009.

Court of Appeals of Maryland.

May 12, 2010.

148

**150**

Raymond A. Hein, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Melvin G. Bergman, Greenbelt, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

BATTAGLIA, J.

Lorin Henry Bleecker, Respondent, was admitted to the Bar of this Court on January 14, 1972. On July 16, 2009, the Attorney Grievance Commission ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16–751(a),[1] filed a "Petition for Disciplinary or Remedial Action" against Bleecker, charging numerous violations of the Maryland Rules of Professional Conduct ("MRPC" or "Rule"), including Rule 1.1 (Competence),[2] Rule 1.3 (Diligence),[3] Rule 1.4(a) and (b) (Communication),[4] Rule 1.8(h) (Conflict of Interest: Current

---

**1.** Rule 16–751(a) provides in relevant part:

   (a) **Commencement of disciplinary or remedial action.**
   (1) Upon approval of the Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

**2.** Rule 1.1 provides:

   A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**3.** Rule 1.3 provides:

   A lawyer shall act with reasonable diligence and promptness in representing a client.

**4.** Rule 1.4 provides:

   (a) A lawyer shall: (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules; (2) keep the client reasonably informed about the status of the matter; (3) promptly comply with reasonable requests for information; and (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permit-

Clients: Specific Rules),[5] Rule 1.16(a) (Declining or Terminating Representation),[6] Rule 3.1 (Meritorious Claims and Contentions),[7] Rule 3.3(a)(1) and (b) (Candor Toward the Tribunal),[8] Rule 8.1(a) and (b) (Bar Admission and Disciplinary Matters),[9] and Rule 8.4(a), (c), and (d) (Misconduct).[10] The

---

> ted by the Maryland Lawyers' Rules of Professional Conduct or other law.
>
> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
>
> At the conclusion of the hearing, Petitioner withdrew the charge under Rule 1.4(a)(4), but pursued the remaining Rule 1.4(a) and (b) charges.

5. Petitioner withdrew at the conclusion of the hearing the charge that Bleecker violated or attempted to violate Rule 1.8(h). Therefore, Rule 1.8(h) will not be a part of our consideration.

6. Rule 1.16(a) provides:

> (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
> (1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law;
> (2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
> (3) the lawyer is discharged.

7. Petitioner withdrew and subsequently requested reinstatement of the Rule 3.1 charge. The hearing judge determined that Bleecker did not violate Rule 3.1, because he "did not knowingly and intentionally file a time-barred lawsuit." Bar Counsel has not filed an exception regarding this conclusion, and therefore Rule 3.1 will not be a part of our consideration.

8. Rule 3.3 provides in pertinent part:

> (a) A lawyer shall not knowingly:
> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
>
> *      *      *
>
> (a) The duties stated in paragraph (a) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6.

9. Petitioner charged Bleecker with violations of Rule 8.1(a) and (b), but withdrew the Rule 8.1(a) charge at the conclusion of the hearing. Rule 8.1(b) provides:

factual bases of the charges involved Bleecker's failure to timely file a complaint on behalf of Carolyn Stelle, his client, in a claim arising from a motor vehicle accident in which she sustained significant personal injuries. This Court referred the matter to Judge Ronald B. Rubin of the Circuit Court for Montgomery County for a hearing to determine findings of fact and conclusions of law pursuant to Maryland Rule 16–757 (Judicial Hearing).[11]

---

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\*       \*       \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

10. Rule 8.4 provides:

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\*       \*       \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice; . . . .

11. Rule 16–757 provides:

(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.
(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

On November 2, 2009, Judge Rubin held an evidentiary hearing, during which Bleecker was represented by counsel, and thereafter, issued Findings of Fact and Conclusions of Law, in which he found, by clear and convincing evidence, that Bleecker's acts and omissions constituted violations of Rules 1.1, 1.3, 1.4(a) and (b), 1.16(a), 8.1(b), and 8.4(a) and (d), but not violations of 3.3(a)(1) and 8.4(c). In so doing, Judge Rubin made the following findings regarding Bleecker's background, as well as his initial representation of Mrs. Stelle:

Lorin Henry Bleecker ("Bleecker") was admitted to the Maryland Bar on January 14, 1972. He also is admitted to the District of Columbia Bar and to the Bars of the United States District Courts for the Districts of Maryland and the District of Columbia, as well as the United States Court of Appeals for the Fourth Circuit. He began his career in the office of the District of Columbia Corporation Counsel, and then went into private practice where he concentrated in commercial litigation, real estate transactions, and personal injury cases.

From 2000 until July 2004, Bleecker was a partner in the law firm of Blaylock and Bleecker, Chartered, which had an office in Bethesda, Maryland. While with that firm, Bleecker began representing Carolyn Stelle following her involvement in a serious automobile accident on November 25, 2002. Mrs. Stelle sustained significant injuries, including fractures of her left ankle and tibia, for which she was

---

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

(d) **Transcript.** The petitioner shall cause a transcript of the hearing to be prepared and included in the record.

(e) **Transmittal of record.** Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

hospitalized at Suburban Hospital in Bethesda until early December of 2002. While in the hospital, one of her physicians gave her a business card from Blaylock and Bleecker. Upon being discharged from Suburban Hospital, Mrs. Stelle spent several additional weeks convalescing at the Hebrew Home of Greater Washington in Rockville. Mrs. Stelle's son contacted Bleecker while she was still in the Hebrew Home. Bleecker visited Mrs. Stelle at the Hebrew Home, and she agreed to retain the firm of Blaylock and Bleecker to handle any claim she might have against the other driver involved in her November 25, 2002 accident.

Mrs. Stelle advised Bleecker that her insurance carrier was planning to terminate her coverage for treatment at and discharge her from the Hebrew Home. At Mrs. Stelle's request, Bleecker contacted the carrier and objected to the proposed release date. The carrier revised its decision and extended coverage to allow Mrs. Stelle to remain at the Hebrew Home and receive an additional thirty days of treatment at that facility.

The hearing judge described Bleecker's continued representation of Mrs. Stelle after the dissolution of the Blaylock and Bleecker firm in July 2004:

Bleecker was the attorney responsible for Mrs. Stelle's case throughout the time he remained a partner at Blaylock and Bleecker. In July 2004, Bruce Blaylock, Esquire, without consulting Bleecker, decided to dissolve the firm. Blaylock then locked Bleecker out of the firm's office space in Bethesda and gave him only minimal access to the client files. As a result, Bleecker had to set up his own law practice at a new location. Bleecker found office space in Rockville and established The Bleecker Law Firm, P.A.

Mrs. Stelle first learned about the dissolution of Blaylock and Bleecker from Bruce Blaylock, who contacted her about continued representation by his successor law practice. Blaylock attempted to pressure Mrs. Stelle into remaining his client. Mrs. Stelle testified that she was unnerved by Blaylock's actions and told him that she preferred to have Bleecker represent her on a going forward basis. Through

a third party, Mrs. Stelle contacted Bleecker at his new office.

Mrs. Stelle testified that she signed a Retainer Agreement employing The Bleecker Law Firm, P.A. in July 2004. The copy of the Retainer Agreement received in evidence bears Mrs. Stelle's signature, but it is not dated. Nevertheless, it is clear that The Bleecker Law Firm, P.A. represented Mrs. Stelle as of October 12, 2004, the date on which Bleecker sent letters confirming his representation to claim representatives at Allstate Insurance Company (Allstate) and State Farm Mutual Automobile Insurance Company (State Farm). Allstate insured Mrs. Stelle's vehicle, while State Farm was the insurance carrier for the other driver, Philip A. Kostrzewiski.

Judge Rubin found that in correspondence to insurance carriers, medical providers, and Mrs. Stelle, Bleecker appropriately identified the date of the accident as November 25, 2002:

In both of his October 12, 2004 letters to the insurance carriers, Bleecker correctly referenced the "Date of Loss" as November 25, 2002. In his letter to State Farm, Bleecker wrote:

I am advised that my client is nearing the completion of her treatment and that her treating physician is soon to discharge her from active care. As soon as we know that she has reached maximum medical improvement we will be in touch with you with our demand.

In January and February 2005, Bleecker sent additional correspondence related to his representation of Mrs. Stelle. There was a billing dispute with Suburban Hospital, where Mrs. Stelle had been hospitalized, both immediately following the accident and again in May and July of 2004 for follow-up surgical procedures. Also, on February 14, 2005, Bleecker sent a letter to Mrs. Stelle enclosing a "revised Authorization and Assignment agreement that I have received from the attorneys for Suburban Hospital." Bleecker's February 14, 2005 letter to Mrs. Stelle correctly refer-

enced the date of loss as "11/25/02." In that letter, Bleecker wrote that he had spoken with Mrs. Stelle's primary treating physician, Dr. Victor Wowk, about her case and that Dr. Wowk was "in the process of preparing a final report for me." Bleecker further noted that Mrs. Stelle was to provide a loss of earnings statement from her place of employment, the National Institutes of Health (NIH). Bleecker then wrote:

> As soon as I hear from Dr. Wowk, I will prepare a demand letter which will include a complete copy of your records and bills. We can then review it before it goes out.

On February 14, 2005, the same day he wrote to Mrs. Stelle, Bleecker also sent out a letter addressed to Doctors Ira Brecher and Betsy Ballard, two physicians involved in treating Mrs. Stelle for injuries sustained in the accident. That letter correctly referenced the date of loss as November 25, 2002, and requested these physicians to provide records pertaining to their treatment of Mrs. Stelle. Bleecker considered the matter to be of some urgency, as he pointed out that "[t]he applicable Statute of Limitations runs in November of this year."

Mrs. Stelle testified that she submitted to Bleecker an itemized schedule of time she had missed from work at various intervals following the November 2002 accident. This court admitted a summary cover page dated March 14, 2005, prepared by a supervisor at NIH, along with a three-page attachment compiled by Mrs. Stelle in conjunction with the NIH payroll office.

The hearing judge described Bleecker's failure to prepare a written settlement demand as he had promised in his February 2005 letter to Mrs. Stelle, as well as his failure to timely file the complaint, in which he misrepresented that the accident occurred on November 25, 2003, rather than 2002, ostensibly due to a clerical error:

> Bleecker testified that commencing with the acrimonious dissolution of Blaylock and Bleecker in July 2004, and for

several years thereafter, he had been coping with marital difficulties, as well as serious personal and family medical conditions. Bleecker underwent quadruple by-pass surgery in August of 2006 and was prescribed anti-depressant medication. Moreover, during the time Bleecker was setting up his new practice, his step-mother required institutionalization due to dementia. Bleecker traveled to Florida on many occasions during this period to assist his father with this difficult process.

Over the nine months following his correspondence to State Farm, dated February 14, 2005, Bleecker failed to prepare a written settlement demand concerning Mrs. Stelle's claim. Bleecker also failed to file suit on behalf of Mrs. Stelle within three years from the date her cause of action accrued, i.e., prior to the expiration of the statute of limitations prescribed under Maryland law. Mrs. Stelle was unaware of the applicable statute of limitations for filing suit in her case. She relied on Bleecker to take all necessary actions to protect her interests, including the filing of a timely lawsuit, in connection with the automobile accident.

On December 13, 2005, Mrs. Stelle faxed Bleecker a copy of a notice of affidavit judgment entered against her on November 30, 2005 in the District Court of Maryland for Montgomery County. The judgment, in the amount of $1,053.68, plus costs, had been entered in the case of *Suburban Hospital Systems, Inc. v. Carolyn Stelle*, Case No. 0601–0018270–2005. Mrs. Stelle's fax cover page included the message, "Sorry—just got your telephone message—our answering machine has problems—please let me know when this is resolved." Mrs. Stelle testified that she always understood Bleecker, in addition to handling her personal injury claim, to be taking care of various ancillary matters related to the November 25, 2002 accident, including Suburban Hospital's billing claims.

On June 24, 2006, Mrs. Stelle was served with process issued by the Clerk of the Circuit Court for Montgomery County in a civil matter captioned *Law Offices of Bruce A. Blaylock, Chartered v. Carolyn Stelle*, Case No. 272346–V.

This was an action filed by Blaylock's successor law practice entity against Mrs. Stelle for breach of contract and unjust enrichment associated with Mrs. Stelle's decision to retain Bleecker following the dissolution of Blaylock and Bleecker. Like the Suburban Hospital matter, the Blaylock lawsuit was one of the ancillary matters that Mrs. Stelle referred to Bleecker to handle.

On July 14, 2006, Bleecker filed a tort complaint on behalf of Mrs. Stelle in the Circuit Court for Montgomery County, against Philip Allen Kostrzewiski, the other driver in the November 25, 2002 accident. He testified that suit was filed in July so as not to miss the November statute of limitations. Bleecker had an abnormal stress test in July, and knew that it was likely that he needed cardiac surgery. The suit was docketed as Case No. 273183–V. Paragraph Five of the complaint, signed by Bleecker, averred that the accident occurred on "November 25, 200*3*" (Emphasis added). The accident, in fact, occurred on November 25, 2002. Bleecker testified at the hearing that he did not knowingly and intentionally misrepresent the date of the accident in the complaint he filed on July 14, 2006. He explained that he relied on a report prepared by his office staff to track statutes of limitations and that, based on this report, he directed that a complaint for Mrs. Stelle be prepared and filed with the circuit court. He further testified that the office tracking report, erroneously, contained the year of the occurrence as 2003, instead of 2002, the correct year.

Judge Rubin determined that although Bleecker did not "knowingly and intentionally" misrepresent the accident date in the complaint, he failed to promptly disclose to Mrs. Stelle that the statute of limitations had expired after he discovered the error and also failed to keep her informed about the status of her claim:

Having carefully considered this testimony by Bleecker, along with all of the other evidence of record, the court finds that the erroneous date included in the complaint was the result of negligence and was not the product of an intent to mislead or deceive either the circuit court or State Farm.

Hence, the court does not find by clear and convincing evidence, *see Berkey v. Delia,* 287 Md. 302, 318–20, 413 A.2d 170 (1980), that Bleecker knowingly and intentionally misrepresented the accident date in the complaint by one year, as alleged by the Petitioner, in an attempt to conceal his failure to file suit before limitations expired. To be sure, Bleecker's negligence in respect of the statute of limitations is patent. A reasonable person in his position would (or should) have comported himself differently. But that is not the test. The court bases this finding of fact not simply on Bleecker's words at trial, but on his demeanor, body language, and all of the other factors that trial judges consider daily to determine witness credibility. *See Attorney Grievance Comm'n v. Guida,* 391 Md. 33, 50, 891 A.2d 1085 (2006).

However, this court does find by clear and convincing evidence that Bleecker did not promptly disclose the blown statute to Mrs. Stelle after his receipt of the April 2007 letter from State Farm, and that he did not properly consult with her or keep her informed about the status of her claim. He neither sent Mrs. Stelle a copy of the complaint when he filed suit in July 2006, nor notified her that she was the plaintiff in a pending civil action. Further, Mrs. Stelle knew nothing about the lawsuit until April 2008, well after the case was dismissed.[2]

Bleecker was unable to serve defendant Kostrzewiski after filing suit on July 14, 2006, despite repeated efforts to do so. Some eight months later, on March 21, 2007, Bleecker decided to proceed with a demand letter to Arnie Greis, a claim representative for State Farm. In this letter, Bleecker advised that he was "prepared to recommend to my client that she accept the sum of FIVE HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($550,000.00) as a full and final settlement of this claim." Bleecker did not discuss this or any other figure with Mrs. Stelle before sending the March 21, 2007 letter. Hence, Bleecker had no authority to compromise her claim when he wrote to State Farm.

In response to Bleecker's March 21, 2007 letter, Mr. Greis sent a letter acknowledging receipt and stating that Mrs. Stelle's "bodily injury claims are being assessed." Mr. Greis's first letter included a reference to the November 25, 2002 date of loss. In a second letter to Bleecker, dated April 6, 2007, Mr. Greis wrote, "Our file indicates that the statute of limitations ran on November 25, 2005." Mr. Greis asked Bleecker to forward any information establishing that "the statute of limitations has been tolled." Bleecker knew upon receipt of this letter from State Farm that he had missed the statute of limitations. He testified that he tried to call Mrs. Stelle but did not reach her because she was traveling at the time. Bleecker did not respond to Mr. Greis's April 6, 2007 letter, nor did he respond to two follow-up letters from State Farm, dated April 23, 2007 and June 4, 2007. As noted, Bleecker also failed to notify Mrs. Stelle of the limitations problem which was clearly brought to his attention in Mr. Greis's letter of April 6, 2007.

2.   Sadly, albeit ironically, there is no evidence that Bleecker's delay in informing his client of his tort delayed or impeded her ability to collect tort damages from Bleecker, who had no malpractice insurance. There also is no evidence that Bleecker's delay in notifying his client caused assets to become unavailable for collection.

The hearing judge further found that once Bleecker was alerted to the statute of limitations problem by the April 6, 2007 State Farm letter, he took no affirmative steps to amend Mrs. Stelle's complaint or respond to the defendant's motion to dismiss on the ground of limitations:

Although defendant Kostrzewiski had not been served with process, State Farm nevertheless arranged for counsel to defend the pending lawsuit. On June 22, 2007, James S. Livio, Esquire, on behalf of Kostrzewiski, filed a motion to dismiss in *Stelle v. Kostrzewiski.* The motion asserted that the accident at issue "occurred on or about November 25, 2002" and requested dismissal of the action on the ground of limitations. Although he received his service copy of the motion to dismiss, Bleecker did not respond to the motion or file any further papers with the court. Bleecker conceded at the hearing that he did not send Mrs. Stelle a copy of

State Farm's motion (or earlier letter) regarding the statute of limitations.

According to Bleecker, he simply assumed that the dismissal motion would be granted. He further testified that he was not aware of any rule, statute or case that required him to affirmatively respond to the motion. Bleecker was concerned at that point that anything short of a blanket concession would have amounted to an affirmative misrepresentation to the circuit court. He testified that he was worried that filing anything with the court would have caused further prejudice to Mrs. Stelle and simply made matters worse.

Judge Rubin concluded that Bleecker took no steps to correct the inaccurate accident date, even after the Circuit Court denied the defendant's motion to dismiss and motion to reconsider:

On August 9, 2007, the circuit court signed an order denying the defendant's motion to dismiss with the handwritten notation, "Complaint alleges that the accident occurred on 11/25/03 [and] the complaint was filed on 7/14/06." Bleecker received a copy of this order, which was entered on the court's docket on August 13, 2007. He took no action to correct the inaccurate accident date set forth in paragraph five of the complaint. Bleecker did not send a copy of the court's order to Mrs. Stelle.

On August 15, 2007, counsel for defendant Kostrzewiski filed a motion to reconsider the denial of his motion to dismiss. In this motion, defendant's counsel explained in greater detail that the accident date averred in the complaint was incorrect. As an attachment, he submitted a copy of the police accident report indicating the correct accident date of November 25, 2002. Again, Bleecker received his service copy, but did not respond. Again, Bleecker did not send a copy of this motion to his client.

On September 21, 2007, the circuit court denied the motion to reconsider without prejudice and added the handwritten notation, "File an amended complaint." Bleecker

received a copy of that Order, entered on the docket on October 1, 2007, but he took no action in response. Bleecker did not send a copy of this court order to his client.

On October 11, 2007, counsel for defendant Kostrzewiski filed a second motion to dismiss, again trying to apprise the circuit court that the accident date averred in the plaintiff's complaint was off by a year and that the action therefore was barred by limitations. Bleecker received his service copy in the regular course of mail delivery. He did not respond or take any other action. This time, however, the circuit court granted the motion, signing an order dismissing the case with prejudice on October 25, 2007. The circuit court added to the draft order the notation, "No opposition filed." The order of dismissal was entered on the court docket on October 29, 2007. Bleecker received a copy of the court's order but did not send it to his client.

Throughout the four-month period that defendant's counsel tried to get the case dismissed on the ground of limitations, Bleecker took no action to correct the misstatement in the complaint regarding the date of the automobile accident. Nor did he notify Mrs. Stelle that the case was barred by limitations.

The hearing judge then described the events leading to Mrs. Stelle's discovery, from a third party, that her claim had been dismissed:

Mrs. Stelle learned in March 2008 that another District Court collection action, which had been filed against her by Suburban Hospital was scheduled for trial on May 7, 2008. Although Mrs. Stelle did not recognize the distinction, this was a separate case from the case in which Suburban Hospital Systems, Inc. had obtained an affidavit judgment against her on November 30, 2005. The case for which she received notice in March 2008, styled *Suburban Hospital, Inc. v. Carolyn R. Stelle,* Case No. 0601–0009067–2005, involved a separate billing claim.

Upon receiving notice of the May 7, 2008 trial date, Mrs. Stelle sent Bleecker a fax on March 18, 2008. On her cover

page, Mrs. Stelle wrote, "Please take care of the attached and please let me know the status of this and the progress of the claim." The faxed attachments included the District Court trial notice issued in the Suburban Hospital case, as well as a copy of a September 27, 2007 order issued by the Circuit Court for Montgomery County in the action filed by Blaylock against Mrs. Stelle. That order deferred dismissal of the Blaylock civil action and provided for that case to "remain stayed until the underlying tort matter out of which Plaintiff's lien arises is settled or adjudicated."

Bleecker did not respond to Mrs. Stelle's March 18, 2008 fax or advise her about the dismissal of the lawsuit filed against Kostrzewiski. Mrs. Stelle finally discovered that her case had been dismissed after she received a letter dated April 29, 2008 from the attorney representing Suburban Hospital in the pending District Court collection case. That attorney wrote that his office previously had filed a hospital lien with State Farm, but it is now "our understanding that the underlying tort case has been dismissed." The letter from Suburban Hospital's attorney precipitated a phone call by Mrs. Stelle to that attorney's office. Through that contact, she confirmed that her lawsuit had been dismissed.

Judge Rubin found that when Bleecker ultimately met with Mrs. Stelle in person in May 2008, he acknowledged the untimely filing of the claim and promised to "take care of" any outstanding medical bills, but failed to advise Mrs. Stelle to seek the advice of independent counsel regarding a potential malpractice claim against him:

Mrs. Stelle immediately called Bleecker's office and arranged to meet with him on May 5, 2008. At that meeting, Bleecker acknowledged the untimely filing of her case and that it was his fault. He further told Mrs. Stelle that he would "take care of" any outstanding medical bills for treatment of her injuries resulting from the November 25, 2002 accident.

The court finds by clear and convincing evidence that Bleecker did not advise Mrs. Stelle (either during that

meeting or at any other time) to seek the advice of independent counsel regarding any claim or potential claim she may have against him. The court finds credible Mrs. Stelle's testimony that Bleecker never told her to obtain independent legal advice.

The hearing judge noted that Mrs. Stelle wrote to the office of Bar Counsel to lodge a complaint against Bleecker and described Bleecker's failure to respond to letters from Bar Counsel requesting information:

In July 2008, Mrs. Stelle wrote to the office of Bar Counsel to lodge a complaint against Bleecker. Bleecker retained Melvin Bergman, Esquire, to respond to this complaint and to represent him in Bar Counsel's investigation. Mr. Bergman initially responded on behalf of Bleecker by letter dated September 3, 2008. In that letter, Mr. Bergman wrote that when the failure to pursue Mrs. Stelle's claim "was brought to his attention," Bleecker "went to the health care providers and paid the outstanding balances to those providers out of his own pocket, so that no collection lawsuits would be filed against Ms. Steele [sic]." Mr. Bergman also wrote, "We are attempting to gather the documentation on the payments to providers, and will provide them to you under separate cover."

In a letter to Mr. Bergman dated September 16, 2008, Bar Counsel requested additional information concerning Mrs. Stelle's complaint and, in addition, any documentation regarding the payments made by Bleecker to Mrs. Stelle's health care providers. Bleecker did not provide the information regarding payment to health care providers during the investigation, despite several further requests by Bar Counsel. He did provide it, however, when he responded to pre-trial discovery requests in this case. Moreover, the payments made by Bleecker did not have the effect of preventing collection lawsuits from being filed against Mrs. Stelle.

For example, an affidavit judgment was entered against Mrs. Stelle in favor of Suburban Hospital Systems, Inc. on November 30, 2005 in District Court Case No. 0601–

0018270–2005. A Notice of Recorded Lien from the Montgomery County District Court in that case was filed on November 13, 2006 in the Circuit Court for Montgomery County. Court records introduced at the hearing reflect that notices of satisfaction as to that judgment were filed with both the District Court and the Circuit Court in early September 2008. In District Court Case No. 0601–0009067–2005, the collection suit filed by Suburban Hospital, Inc., the court records reflect that a notice of settlement agreement was filed on May 6, 2008, the day before the case was scheduled to go to trial (and the day after Mrs. Stelle met with Bleecker). That case thereafter was voluntarily dismissed on May 22, 2008.

In the civil action filed by The Law Offices of Bruce A. Blaylock, Chartered, against Mrs. Stelle, the plaintiff filed a Line of Dismissal Without Prejudice on September 15, 2008. Blaylock evidently recognized there was no attorney's fee to be apportioned or disputed in light of Bleecker's failure to file the underlying tort action in a timely manner.

Finally, Judge Rubin described Mrs. Stelle's malpractice action against Bleecker, in which she was awarded over $700,000 for past medical expenses, loss of earnings, and noneconomic damages, none of which has been paid:

Notwithstanding Bleecker's failure to advise his client to seek the advice of independent counsel, Mrs. Stelle did retain such counsel, John M. Quinn, Esquire, an attorney with the law firm of Ethridge, Quinn, McAuliffe, Rowan & Hartinger. On September 9, 2008, Mr. Quinn's office filed a malpractice suit on behalf of Mrs. Stelle against Bleecker individually and against The Bleecker Law Firm, P.A. in the Circuit Court for Montgomery County. Following service of process, orders of default were entered against both defendants. Bleecker had no professional liability coverage with respect to Mrs. Stelle's malpractice claim, and he elected not to contest the malpractice case.

The circuit court set a hearing on damages for October 29, 2009. At the conclusion of that hearing, the court found in favor of Mrs. Stelle. On November 2, 2009, judgment

was entered against Bleecker individually and The Bleecker Law Firm, P.A., jointly and severally, in the amount of $74,135.87 for past medical expenses, $28,170.39 for past loss of earnings, plus $620,000.00 in noneconomic damages, for total damages of $722,306.26. The record does not reflect that any portion of this judgment has been paid.

## Standard of Review

■ In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. *Attorney Grievance v. Jarosinski,* 411 Md. 432, 448, 983 A.2d 477, 487 (2009); *Attorney Grievance v. Foltz,* 411 Md. 359, 396, 983 A.2d 434, 456 (2009); *Attorney Grievance v. Gisriel,* 409 Md. 331, 364, 974 A.2d 331, 350 (2009); *Attorney Grievance v. McClain,* 406 Md. 1, 17, 956 A.2d 135, 144 (2008). We review the hearing judge's conclusions of law de novo. Rule 16–759(b)(1); [12] *Jarosinski,* 411 Md. at 448–49, 983 A.2d at 487; *Foltz,* 411 Md. at 396, 983 A.2d at 456; *Gisriel,* 409 Md. at 365, 974 A.2d at 351; *McClain,* 406 Md. at 17, 956 A.2d at 144. In our review of the record, the hearing judge's findings of fact will not be disturbed unless clearly erroneous. Rule 16–579(b)(2); [13] *Jarosinski,* 411 Md. at 448, 983 A.2d at 487; *Foltz,* 411 Md. at 396–97, 983 A.2d at 456; *Gisriel,* 409 Md. at 365, 974 A.2d at 351;

---

**12.** Rule 16–759(b)(1) provides:

**Review by Court of Appeals.** (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

**13.** Rule 16–759(b)(2) provides:

(2) Findings of fact. (A) If no exceptions are filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

(B) If exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

*Attorney Grievance v. Ugwuonye,* 405 Md. 351, 368, 952 A.2d
226, 235–36 (2008).

## Discussion

Neither party has filed exceptions challenging the hearing
judge's findings of fact, and we conclude that the factual
findings are clearly and convincingly supported in the record.[14]

Bar Counsel has filed two exceptions to Judge Rubin's
conclusions of law declining to find violations of Rules 8.4(c)
and 3.3(a)(1). Bleecker has filed four exceptions to Judge
Rubin's conclusions of law recognizing violations of Rules 1.1,
1.16(a), 8.1(b), and 8.4(d). For the reasons set forth below, we
shall sustain Petitioner's exceptions and overrule Respon-
dent's exceptions.

### A. Bar Counsel's Exceptions

■ Bar Counsel takes exception to Judge Rubin's conclu-
sion that Bleecker did not violate Rule 8.4(c):

> Bleecker did not violate Rule 8.4(c) because he did not
> intentionally misrepresent the accident date in the com-
> plaint he filed on behalf of Mrs. Stelle. The parties have
> not cited, and the court has not located, any Maryland case
> in which a violation of this Rule has been found in the
> absence of either a knowingly false statement or a finding of
> intent to mislead.

Our disagreement with Judge Rubin arises from our jurispru-
dence in which violations of Rule 8.4(c) have been determined
on the basis of an attorney's concealment of material informa-
tion, even though the attorney had not affirmatively misrepre-
sented facts. In *Attorney Grievance v. Harris,* 403 Md. 142,
939 A.2d 732 (2008), we determined that Harris violated Rule
8.4(c) when he, shortly after his former wife's death, executed
a transfer order of a mutual fund account owned by the

---

14. Bar Counsel did except to Judge Rubin's finding as mitigation that,
"Bleecker has no prior public disciplinary record." Bleecker acknowl-
edges that on August 6, 2003, he received a public reprimand for
violating Rule 8.1(b). Thus, we sustain Petitioner's exception.

attorney and his former wife, because the attorney knew that he was not entitled to one-hundred percent of the fund. We reasoned that although Harris never expressly made a false statement that he and "Ms. Harris were still married, he concealed the fact that he was no longer married to her." *Id.* at 163, 939 A.2d at 744. Similarly, in *Attorney Grievance v. Floyd,* 400 Md. 236, 929 A.2d 61 (2007), we concluded that an attorney violated Rule 8.4(c) when she concealed the nature of her relationship with another attorney to obtain a higher starting salary with a federal agency. We reasoned that although the attorney did not explicitly misstate any fact, she concealed a material fact, which was dishonest and deceitful in violation of Rule 8.4(c), emphasizing that "deceit can be based not only on overt misrepresentation but on concealment of material facts." *Id.* at 252, 929 A.2d at 70. We agree with Bar Counsel that Bleecker's concealment from his client of material information regarding the dismissal of her case represents a violation of Rule 8.4(c). Bleecker did not promptly disclose the limitations bar after his receipt of the April 2007 State Farm letter, he did not send Mrs. Stelle a copy of the Circuit Court's order dismissing her claim with prejudice, or do anything to reveal the limitations bar to his client; she discovered the dismissal from a third party. Thus, we sustain Petitioner's exception.

Bar Counsel also excepts to the hearing judge's conclusion that Bleecker did not violate Rule 3.3(a)(1), governing candor toward the tribunal. Although Judge Rubin determined that there was no Rule 3.3(a)(1) violation because, "[t]he court found as a fact that Bleecker did not knowingly and intentionally misrepresent the date of accident when he filed the complaint on behalf of Mrs. Stelle," Petitioner contends that Bleecker violated Rule 3.3(a)(1) by failing "to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

Judge Rubin determined that "[t]hroughout the four-month period that defendant's counsel tried to get the [Stelle] case dismissed on the ground of limitations, Bleecker took no action to correct the misstatement in the complaint regarding the

date of the automobile accident," although Bleecker had ample opportunity to apprise the court, over and over again, that the accident date alleged was incorrect; his failure to do so constitutes a violation of Rule 3.3(a)(1). In *Attorney Grievance v. Tanko*, 408 Md. 404, 969 A.2d 1010 (2009), we agreed with the hearing judge that an attorney violated Rule 3.3(a)(1) when he filed misleading expungement petitions on behalf of a client, even though the underlying crimes were not eligible to be expunged. Tanko asserted that he hoped the petitions would "slip through" and avoid detection by the District Court. We reasoned that such actions, taken as a whole, misled the District Court in violation of Rule 3.3(a)(1). *Id.* at 424, 969 A.2d at 1022–23. Here, Bleecker similarly misled the Circuit Court, which relied upon his allegation of the accident date in denying the defendant's motion to dismiss and motion to reconsider. *See also In re Dennis*, 286 Kan. 708, 188 P.3d 1, 20 (2008) (per curiam) (reasoning that an attorney violated Rule 3.3(a)(1) when he certified to the court the service of discovery responses, and failed to correct that certification "when he realized that the responses were never actually sent to opposing counsel," emphasizing that Rule 3.3(a)(1) states that it is a violation for a lawyer to *"fail to correct a false statement"* to the court) (emphasis added). Thus, we sustain Petitioner's exception.

*B. Respondent's Exceptions*

■ Respondent first takes exception to the hearing judge's conclusion that he violated Rule 1.1 concerning competence. Judge Rubin opined:

> This Court has no difficulty concluding that Bleecker failed to act with competence and diligence in representing Mrs. Stelle in her personal injury case. Bleecker's failure to timely pursue a negotiated settlement of Mrs. Stelle's claim and his failure to file suit within the statute of limitations establish violations of Rules 1.1 and 1.3 of the Maryland Lawyer's Rules of Professional Conduct. Bleecker also did not act with competence or diligence in providing assistance

to Mrs. Stelle with respect to the various ancillary issues and court actions that arose in the overall representation. (Citations omitted). In this regard, although Bleecker does not contest that his failure to timely file Mrs. Stelle's claim represented a violation of Rule 1.3 requiring diligent representation, he asserts that the conclusion that Rule 1.1 also was violated is not warranted, because Bleecker "had the requisite experience and competence required of an attorney in personal injury matters," had never previously missed a statute of limitations in his 37 years of practice, and that the filing of the complaint after the expiration of the statute of limitations "was negligent, but not intentional misconduct," referring us to *Attorney Grievance v. Pennington,* 387 Md. 565, 876 A.2d 642 (2005) and *Attorney Grievance v. Thompson,* 376 Md. 500, 830 A.2d 474 (2003).

In *Pennington,* we determined that an attorney did not violate Rule 1.1 when she failed to realize that a complaint was not properly filed and docketed by the Clerk's office before the running of the applicable statute of limitations, although noting that "a better office system would have detected the problem," because "it was the Clerk's Office error that resulted in the problem." 387 Md. at 594, 876 A.2d at 659. Here, though a clerical error may have caused missing the statute of limitations, Bleecker's failure to adequately represent Mrs. Stelle in all of her matters and his concealment of the error from his client and the Circuit Court, reflects a lack of competent representation.

In *Thompson,* moreover, we determined that an attorney's negligent administration of an estate did constitute a Rule 1.1 violation, because he failed to file reports in a timely manner, filed the first accounting only after the issuance of a show cause order, failed to list accounts in which estate assets were maintained, miscalculated various distributions, failed to pay estate taxes at the time of distribution, and paid himself a commission before approval by the Orphans' Court. 376 Md. at 512, 830 A.2d at 481. Bleecker attempts to cast his actions in a lesser light, asserting that "[a] single act of negligence, as in the case at bar, is not clear and convincing evidence of a

violation of Rule 1.1." This argument is without merit, however, because in determining a violation of Rule 1.1 the hearing judge considered Respondent's failure to timely pursue a settlement of Mrs. Stelle's claim, his failure to file the complaint within the statute of limitations, as well as his failure to appropriately assist Mrs. Stelle regarding "various ancillary issues and court actions" stemming from her claim, which caused her even greater financial hardship.

Judge Rubin's conclusion that Rule 1.1 was violated is in accord with our jurisprudence. In *Attorney Grievance v. Dunietz*, 368 Md. 419, 424, 795 A.2d 706, 709 (2002), we agreed with the hearing judge that an attorney violated Rule 1.1 when he failed to timely file a bankruptcy complaint on behalf of his client and failed to move to have the automatic stay lifted in a related bankruptcy matter, impeding the client's efforts to satisfy a judgment. Similarly, in *Attorney Grievance v. Reinhardt*, 391 Md. 209, 217–18, 892 A.2d 533, 538 (2006), we agreed with the hearing judge that an attorney who represented a client in connection with an automobile accident violated Rule 1.1 when he lost the client's file and failed to reconstruct it in a timely fashion. Most recently, in *Attorney Grievance v. Kwarteng*, 411 Md. 652, 658, 984 A.2d 865, 868 (2009), we agreed with the hearing judge that an attorney violated Rule 1.1 when he failed to prepare and answer interrogatories in a personal injury matter and also failed to preserve that client's right of appeal in an employment discrimination claim. Thus, we overrule the exception.

■ Bleecker next excepts to the conclusion that he violated Rule 1.16(a) concerning termination of representation. Judge Rubin determined:

As soon as Bleecker became aware of the missed statute of limitations (which was no later than April 6, 2007), he was in a position where his continued representation of Mrs. Stelle created a conflict of interest. He should have immediately sought to withdraw from the representation and advised Mrs. Stelle to seek the advice of independent counsel because his interests were now adverse to those of his client.

Bleecker contends that after the complaint was dismissed in October 2007, he no longer represented Mrs. Stelle "in that matter," but continued to appropriately represent her interests in the various health care providers' collection actions. As Judge Rubin aptly noted, Bleecker was obligated to withdraw from the representation, when he became aware that the statute of limitations had expired, as his interests were untenably at odds with his client's, but also was obligated to advise Mrs. Stelle to seek independent counsel concerning a potential malpractice claim. In *Attorney Grievance v. Queen,* 407 Md. 556, 967 A.2d 198 (2009), we found mitigation in Queen's advice to his client to hire counsel to assert a malpractice claim against him, after he failed to properly identify a defendant in the client's personal injury complaint, resulting in dismissal; in so doing, we emphasized Queen's "principled effort to ensure that [his client] was fairly and fully compensated." *Id.* at 566, 967 A.2d at 204; *see also Pennington,* 387 Md. at 581, 876 A.2d at 651 (reasoning an attorney violated Rule 1.16(a) when she failed to withdraw from representation of her clients "after her representation gave rise to their cause of action against her"). Thus, we overrule Bleecker's 1.16(a) exception.

█ Respondent also takes exception to Judge Rubin's conclusion that he violated Rule 8.1(b) concerning disciplinary matters, in which Judge Rubin opined:

The court concludes ... that Bleecker knowingly failed to respond to lawful demands for information from a disciplinary authority, in violation of Rule 8.1(b). Bleecker's failure to respond to Bar Counsel's three letters was admitted during the hearing before this court and conclusively establishes this violation. The fact that Bleecker belatedly provided this information during pre-trial discovery does not obviate the violation of the Rule.

(Citations omitted). Bleecker asserts that the "gravamen" of the hearing judge's conclusion stems from his delay in providing documentation demonstrating that he had paid Mrs. Stelle's medical providers, as he promised in his May 2008 meeting with Mrs. Stelle. While acknowledging this delay,

Bleecker contends that "it took a substantial amount of time to finally locate the information," and he had no desire "whatsoever to thwart Bar Counsel's investigation." This argument is without merit.

In *Attorney Grievance v. Queen,* 407 Md. at 565–66, 967 A.2d at 203–04, we determined that an attorney violated Rule 8.1(b) when he failed to respond to Bar Counsel's initial request for information and received three more written requests before his counsel responded on his behalf. Similarly, in *Attorney Grievance v. Kreamer,* 387 Md. 503, 530–31, 876 A.2d 79, 95–96 (2005), we reasoned that an attorney violated Rule 8.1(b) when she repeatedly failed to respond to three written requests from Bar Counsel. Here, Bleecker failed to respond to repeated written requests for information from Bar Counsel regarding Mrs. Stelle's complaint, in violation of the Rule. *See also Attorney Grievance v. Tolar,* 357 Md. 569, 582, 745 A.2d 1045, 1052 (2000) (per curiam) (agreeing with the hearing judge that an attorney violated Rule 8.1(b) by failing to respond to Bar Counsel's requests for information for approximately three months); *Attorney Grievance v. Fezell,* 361 Md. 234, 255, 760 A.2d 1108, 1119 (2000) (holding that "[t]he practice of law carries with it special responsibilities of self-regulation, and attorney['s] cooperation with disciplinary authorities is of the utmost importance to the success of the process and the integrity of the profession"). This exception is overruled.

Finally, Bleecker excepts to Judge Rubin's conclusion that he violated Rule 8.4(d), concerning conduct prejudicial to the administration of justice, that being:

Bleecker filed an untimely lawsuit containing incorrect information that resulted in: (1) his client losing the opportunity to recover hundreds of thousands of dollars in a serious tort action, and (2) a tort defendant having to expend substantial time and effort to dispose of what was by that time a meritless case. Moreover, Bleecker did not timely disclose the missed statute to his client to whom he owed a duty of candor, regardless of whether he was (or should be)

compelled by law to reveal his error to the circuit court or opposing counsel. Bleecker's inaction in the case also left Mrs. Stelle exposed to two District Court collection lawsuits. Viewed in its totality, Bleecker's conduct was prejudicial to the administration of justice and had profound, negative consequences for his client.

Respondent admits that "he was negligent in his overall handling of the Stelle case," but contends that Rule 8.4(d) addresses conduct more egregious than "merely falling below the standards that the public normally expects of attorneys." We agree with Judge Rubin that Bleecker's failure to timely file Mrs. Stelle's personal injury claim, compounded by his failure to promptly notify Mrs. Stelle and advise her to seek the advice of independent counsel regarding a malpractice action, constituted behavior that seriously impairs public confidence in the entire profession, in violation of Rule 8.4(d). In *Attorney Grievance v. Rose*, 391 Md. 101, 111, 892 A.2d 469, 475 (2006), we agreed with the hearing judge that an attorney violated Rule 8.4(d) by failing to keep his client advised of the status of the representation and to diligently represent his client's interests, conduct "which tends to bring the legal profession into disrepute." In *Attorney Grievance v. Reinhardt*, 391 Md. at 222, 892 A.2d at 540, we determined that an attorney violated Rule 8.4(d) when he failed to act on the client's case for over three years, reasoning that "[f]ailure to represent a client in an adequate manner" is conduct prejudicial to the administration of justice. *See also Attorney Grievance v. Ficker*, 399 Md. 445, 451–55, 924 A.2d 1105, 1109–11 (2007) (agreeing with the hearing judge that an attorney violated Rule 8.4(d) by failing to appear at two clients' scheduled court dates). Thus, we overrule this exception.

**Sanction**

■ We must now consider the appropriate sanction for Bleecker's violations of Rules 1.1, 1.3, 1.4(a) and (b), 1.16(a), 3.3(a)(1), 8.1(b), and 8.4(a), (c), and (d). Petitioner recommends disbarment, while Bleecker suggests a reprimand or a short-term suspension.

We evaluate every attorney grievance matter on its own merits, taking into account the facts and circumstances involved. *Attorney Grievance v. Gisriel,* 409 Md. 331, 385, 974 A.2d 331, 362 (2009). We have consistently iterated that the goal of attorney discipline is protection of the public, rather than the punishment of the erring attorney. *Attorney Grievance v. Goff,* 399 Md. 1, 30, 922 A.2d 554, 571 (2007). We protect the public through sanctions against offending attorneys in two ways: through deterrence of "the type of conduct which will not be tolerated," and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State. *Attorney Grievance v. Siskind,* 401 Md. 41, 75, 930 A.2d 328, 347–48 (2007) (citation omitted). The public is protected when the sanction imposed is commensurate with the nature and gravity of the violations and the intent with which they were committed. *Attorney Grievance v. Shryock,* 408 Md. 105, 126, 968 A.2d 593, 605 (2009). Therefore, we must consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances. *Attorney Grievance v. Harris,* 403 Md. 142, 166–67, 939 A.2d 732, 746–47 (2008).

The gravamen of the misconduct in the present case rests upon Bleecker's concealment of the statute of limitations bar from Mrs. Stelle, precluding his client from obtaining any recovery for her substantial injuries, as well as his failure to correct the misrepresentation of the accident date to the Circuit Court, thereby causing the Circuit Court to needlessly expend time and other resources, all in violation of Rules 8.4(a), (c), and (d), as well as 1.1, 1.3, 1.4(a) and (b), 1.16(a), and 3.3(a)(1), compounded by his failure to respond to written requests for information from Bar Counsel, in violation of Rule 8.1(b).

In determining the appropriate sanction, we often look to the aggravating factors found in Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions. These include:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

*Harris*, 403 Md. at 167–68, 939 A.2d at 747. In this case, factors (a), (d), (e), (i), and (j) are implicated. Respondent has a prior disciplinary offense, as he was reprimanded by the Attorney Grievance Commission in 2003 for a violation of Rule 8.1(b). In the present proceeding, Bleecker again violated Rule 8.1(b) by knowingly failing to respond to several written demands for information, thereby thwarting Bar Counsel's efforts to investigate Mrs. Stelle's complaint. Moreover, Bleecker has substantial experience in the practice of law, as he has been practicing law since 1972.

Most imperative in this case is factor (d), "multiple offenses." Bleecker failed to prepare a written settlement demand or timely file Mrs. Stelle's claim; he failed to keep his client reasonably informed and also inappropriately handled collection actions filed against Mrs. Stelle as a result of the accident, all in violation of Rules 1.1, 1.3, 1.4(a) and (b), and 8.4(d). Once he discovered the incorrect accident date, he failed to withdraw from the representation and advise Mrs. Stelle to seek independent counsel to pursue a malpractice claim in violation of Rule 1.16(a), declined to take any corrective action to apprise the Circuit Court of the expiration of the statute of limitations in violation of Rule 3.3(a)(1), and concealed the dismissal of the claim from his client in violation of Rule 8.4(c). Finally, Bleecker repeatedly failed to respond to written requests for information from Bar Counsel in their

investigation of Mrs. Stelle's complaint against him, in violation of Rule 8.1(b). In sum, Bleecker's acts and omissions were egregious and in violation of multiple Rules.

Factor (j), "indifference to making restitution," is also relevant in the present case. Mrs. Stelle has suffered serious hardship as a result of Respondent's failure to effectively prosecute her personal injury claim. Moreover, Mrs. Stelle has not had the benefit of recompense, largely because Bleecker had no professional liability coverage. In the malpractice claim, the Circuit Court entered a judgment by default against Bleecker individually and The Bleecker Law Firm, P.A., jointly and severally, in the amount of $74,135.87 for past medical expenses, $28,170.39 for past loss of earnings, plus $620,000.00 in noneconomic damages, for total damages of $722,306.26. Mrs. Stelle remains uncompensated for her injuries, as no portion of this judgment has been paid.

■■■ We also, however, consider mitigating factors, including:

> "absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses."

*Attorney Grievance v. Gordon,* 413 Md. 46, 63, 991 A.2d 51 (2010) (2010), quoting *Attorney Grievance v. Sweitzer,* 395 Md. 586, 599, 911 A.2d 440, 448 (2006).

Bar Counsel takes exception to the hearing judge's mitigation finding that, "[t]he statute was missed due to Bleecker's negligence, caused in part by the turmoil in his personal and professional life." Bar Counsel asserts that Bleecker attributed the expiration of the statute of limitations to a clerical error, rather than any personal and professional turmoil.

Although Bleecker testified regarding his health problems and financial and familial difficulties in 2005 and 2006, as well as stresses stemming from the dissolution of Blaylock and Bleecker, he testified that the missed statute of limitations was due to an error in a manually created statute of limitations report prepared by his office staff. Thus, we sustain this exception.

Judge Rubin also determined that, "Bleecker is genuinely remorseful and appreciates both the wrongful nature of his conduct as well as its gravity." The hearing judge further found as mitigation that Bleecker "did not seek or obtain any personal benefit by reason of the misconduct."

Taking into consideration the mitigation, we still are persuaded that the appropriate sanction in this case is disbarment, given Bleecker's concealment from his client and the court of the missed statute of limitations. In *Harris*, we imposed the sanction of disbarment when an attorney concealed from a mutual fund manager that he and his former spouse were divorced, and executed a transfer indicating that he was entitled to sole possession of the fund shortly after his former wife's death. *Harris*, 403 Md. at 163, 939 A.2d at 744. In so doing, we emphasized the wrongful nature of Harris' conduct, especially "because it involve[d] dishonesty." *Id.* at 168, 939 A.2d at 747. Recently, in *Attorney Grievance v. Gordon*, we considered, in a reciprocal discipline proceeding, the appropriate sanction when an attorney, while representing a client in a breach of contract case, submitted what appeared to be the original signature page of a year 2000 contract, but was, instead, a replacement signature page signed by his client on the eve of the 2005 summary judgment hearing. We emphasized that in circumstances in which lawyers have been untruthful to a tribunal, disbarment is often appropriate. *Gordon*, 413 Md. at 62, 991 A.2d at 60.

In an admissions context, we also did not admit an applicant into the practice of law, because he failed to timely supplement his application, until after he passed the bar examination, with the information that he had been arrested, convicted, and

jailed in Virginia for driving while intoxicated, reckless driving, eluding a police officer, and unsafe lane changing. *In the Matter of the Application of Gregory John Strzempek,* 407 Md. 102, 962 A.2d 988 (2008). We reasoned that the applicant's concealment of his conviction and arrest during his Character Committee interview, as well as his failure to disclose that information until after he was advised that he passed the bar examination, demonstrated his lack of candor and unfitness. *Id.* at 114, 962 A.2d at 995.

Here, Bleecker systematically concealed from his client and the court that the statute of limitations had expired on Mrs. Stelle's claim. As a result, Mrs. Stelle was precluded from acquiring recompense for her severe injury. This conduct warrants the gravest sanction, disbarment, for the protection of the public.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST LORIN HENRY BLEECKER.**