*Attorney Grievance Commission v. Richard W. Moore, Jr.*
Misc. Docket AG No. 7, September Term 2015

**Attorney Discipline - Neglect of Clients – Failure to Respond to Bar Counsel – Indefinite Suspension**.  An indefinite suspension is the appropriate sanction when an experienced attorney, who had previously been disciplined for violations related to neglect of client matters, failed to attend diligently to the immigration cases of two clients, resulting in significant delay in the resolution of those cases, and failed to respond in a timely manner to the lawful requests of Bar Counsel concerning complaints filed against him by those clients.  While the misconduct was attributable in part to the attorney's psychological issues and was mitigated by the attorney's remorse, protection of the public requires suspension of the attorney's practice of law pending his efforts to resolve his personal issues.

MLRPC 1.1, 1.3, 1.4, 1.16, 8.1(b), 8.4(d).

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 7

September Term, 2015

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

RICHARD W. MOORE, JR.

Barbera, CJ
*Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

Opinion by McDonald, J.

Filed:  April 22, 2016

*Battaglia, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

This attorney disciplinary matter concerns a lawyer with 25 years' experience who was reprimanded by this Court in 2009 for his admitted violations of the Maryland Lawyers' Rules of Professional Responsibility ("MLRPC") relating to neglect of clients and a failure to respond to requests for information from Bar Counsel. Shortly after receiving that reprimand, Respondent Richard W. Moore, Jr. undertook representation of clients in two immigration matters that took him down the same path of nonperformance of his professional obligations.

To his credit, Mr. Moore has, as before, largely admitted the violations. We also recognize what appears to be his sincere remorse and the relationship of these violations to his difficulty in coping with long-standing personal issues. The hearing judge aptly characterized the source of Mr. Moore's misconduct as "representational paralysis in the face of a difficult case rather than … dishonesty." Nevertheless, as the regulator of the legal profession in Maryland, we are obligated to protect the public as best we can from attorneys who fail, for whatever reason, to conform to professional norms. Accordingly, we suspend Mr. Moore from the practice of law indefinitely until such time as he can satisfy the Court that the misconduct will not recur.

## Background

### A.   *Procedural Context*

On March 31, 2015, the Attorney Grievance Commission ("Commission") through Bar Counsel, filed a Petition for Disciplinary or Remedial Action with this

Court against Mr. Moore. The Commission charged Mr. Moore with violations of MLRPC 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.5 (Fees), 1.15 (Safekeeping Property), 1.16 (Declining or Terminating Representation), 8.1(b) (Bar Admission and Disciplinary Matters), and 8.4(c) & (d) (Misconduct) arising out of his representation of clients in two immigration matters.

Pursuant to Maryland Rule 16-752(a), the Court designated Judge Julie L. Glass of the Circuit Court for Baltimore County to conduct a hearing concerning the alleged violations and to provide findings of fact and recommended conclusions of law. Before the hearing judge, the Commission did not pursue the alleged violations of MLRPC 1.5, 1.15, and 8.4(c). The parties entered into a comprehensive stipulation of facts and Mr. Moore stipulated to most of the remaining violations of the MLRPC.

On October 7 and 8, 2015, the hearing judge conducted an evidentiary hearing, at which several witnesses, including Mr. Moore, testified and the stipulation and other documents were admitted into evidence. On November 12, 2015, the hearing judge issued a thorough memorandum opinion in which she made detailed findings of fact concerning the alleged violations, as well as findings concerning aggravating and mitigating circumstances. In her recommended conclusions of law, the hearing judge concluded that Mr. Moore had committed all of the remaining violations charged by the Commission.

Neither party filed any exceptions to the hearing judge's findings and conclusions. Oral argument before this Court on March 3, 2016, largely concerned the appropriate sanction.

***B.*** ***Facts***

The hearing judge's fact findings are uncontested, as the parties stipulated to most of them and no exceptions were filed by either side. Therefore, we treat the hearing judge's fact findings as established. Maryland Rule 16-759(b)(2)(A). Those findings, as well as undisputed matters in the record, reveal the following.

*Law Practice*

Mr. Moore has been a member of the Maryland Bar since June 1991. During the period of time pertinent to this case, he maintained a law office in Baltimore County. Approximately 80 percent of his practice is dedicated to immigration law.

*Prior Discipline*

In June 2009, Mr. Moore was reprimanded by consent for failing to provide diligent representation, failing to communicate with a client, and failing to respond to requests for information from Bar Counsel, in violation of MLRPC 1.3, 1.4, and 8.1(b). *See Attorney Grievance Commission v. Moore*, 409 Md. 303, 973 A.2d 820 (2009).

*Representation of Mauro Pasqualucci*

Mauro Pasqualucci was born in Italy in 1955, came to the United States with his family as child in 1964, and has resided primarily in the United States since that time. Beginning in 1974, near the end of the Vietnam War, he served in the Marines for two years and was honorably discharged. After his discharge from the military, Mr. Pasqualucci was convicted of a drug offense and served time in federal prison. Following his release from prison in the early 1980s, Mr. Pasqualucci has worked as

3

a licensed taxi cab driver in Annapolis for the past three decades, apparently without further incident until July 2009. At that time, he was arrested by immigration authorities, and was threatened with deportation to Italy, apparently based on his decades-old criminal conviction.

After his arrest, Mr. Pasqualucci was confined in the Howard County Detention Center. Mr. Pasqualucci had difficulty communicating with friends and family outside the detention center. A friend of Mr. Pasqualucci arranged for Mr. Moore to represent him and eventually posted a $20,000 bond for Mr. Pasqualucci's release. Mr. Pasqualucci paid Mr. Moore $2,500 for his services in the immigration case.

A hearing was scheduled before an immigration judge on August 10, 2009 while Mr. Pasqualucci was still being detained. Although Mr. Moore had been engaged to represent Mr. Pasqualucci as of that date, Mr. Moore had not filed his appearance and was not present at the hearing. The hearing was rescheduled to allow Mr. Pasqualucci time to contact Mr. Moore.

On the same date as the hearing, Mr. Moore sent a letter to Mr. Pasqualucci, listing several options for avoiding deportation. One of the options was to file an N-600 Application for Certificate of Citizenship (which would allow Mr. Pasqualucci to become an American citizen based on the citizenship of Mr. Pasqualucci's father, who had become a naturalized citizen in 1967).[1] Although Mr. Moore knew that filing this

---

[1] An applicant may submit the N-600 Application if, as relevant to Mr. Pasqualucci, "you are requesting a Certificate of Citizenship because you automatically became a citizen of the United States after birth, but before you turned

application could be an appropriate strategy for Mr. Pasqualucci to avoid deportation, Mr. Moore never discussed this option further with Mr. Pasqualucci and never filed the application.

Nine months later, after Mr. Pasqualucci had been released from the detention center, he had another hearing before the immigration judge on May 27, 2010. Shortly before the hearing Mr. Moore appeared at the courthouse and met with Mr. Pasqualucci for the first time. During the hearing, Mr. Moore advised the court that Mr. Pasqualucci contended that he was a United States citizen through his father and thus was not susceptible to deportation. Mr. Moore admitted that he did not have any evidence of Mr. Pasqualucci's citizenship. The court advised Mr. Moore that

---

18 years old." *Instructions for Form N-600, Application for Certificate of Citizenship*, U.S. Citizenship and Immigration Services at 1 (Feb. 3, 2015), https://www.uscis.gov/ sites/default/files/files/form/n-600instr.pdf. Pertinent to Mr. Pasqualucci, a child born outside the United States automatically became a citizen after (rather than at) birth if the child was under 18 from December 24, 1952 to February 26, 2001, the child was residing as a Green Card holder in the U.S., and any of the following conditions were met:

- both parents naturalized before the child's 18th birthday;
- if one parent died, the surviving parent naturalized before the child turned 18;
- if the parents legally separated, the parent maintaining legal and physical custody naturalized before the child turned 18; or
- if the child was born out of wedlock and paternity has not been established by legitimation, the mother naturalized before the child turned 18

*Citizenship Through Parents*, U.S. Citizenship and Immigration Services (Nov. 10, 2015), https://www. uscis.gov/ us-citizenship/citizenship-through-parents. The record does not reveal which (if any) of these four conditions Mr. Pasqualucci would have met.

he had until July 25, 2010, to provide proof of Mr. Pasqualucci's claim of citizenship and continued the case until December 16, 2010.

At the subsequent hearing on December 16, 2010, the immigration judge was reluctant to resolve the case on the materials Mr. Moore had submitted. At the suggestion of the immigration judge, Mr. Moore requested, and was granted, a further continuance to file the N-600 Application. A fourth hearing was scheduled for August 11, 2011.

Mr. Moore did not communicate with Mr. Pasqualucci between the December 2010 hearing and the August 2011 hearing, even though Mr. Pasqualucci tried to reach Mr. Moore, eventually for the purpose of terminating the representation.

When Mr. Pasqualucci finally met with Mr. Moore at the August 2011 hearing, he asked Mr. Moore why he had been so unresponsive. Mr. Moore said that he had been having "personal issues." During the hearing, Mr. Pasqualucci told the immigration judge that he wished to terminate Mr. Moore's representation and the court once again continued the case. At the hearing, Mr. Moore also asked for a continuance to file the N-600 Application, which the court again granted.

Eventually, Mr. Pasqualucci engaged another attorney who filed an application for citizenship based on Mr. Pasqualucci's prior military service. On the basis of that application, Mr. Pasqualucci obtained citizenship on July 19, 2013.

Mr. Moore neither filed the N-600 Application nor filed a motion to strike his appearance even though he understood that he had been terminated after the August 2011 hearing. Although Mr. Moore had conducted research and gathered

6

documentation related to Mr. Pasqualucci's childhood, family history, and education, Mr. Moore did not provide the research or return the documentation to Mr. Pasqualucci upon termination of the representation. He did, however, return Mr. Pasqualucci's fee, but only after Mr. Pasqualucci had filed a complaint with the Commission in March 2014.

*Representation of the Custodio Family*

Not long after he parted ways with Mr. Pasqualucci, Mr. Moore agreed to represent the fiancé and daughter of Michael Carrillo Custodio in another immigration matter. On October 31, 2011, Mr. Custodio retained Mr. Moore and paid him $5,000 for legal services. Mr. Moore successfully assisted Mr. Custodio in obtaining a visa in May 2012 to allow Mr. Custodio's fiancé and her daughter to enter the United States. After they arrived in the United States, Mr. Custodio and his fiancé were married.

After the wedding, Mr. Moore prepared and attempted to file an I-485 form (to adjust the status of the wife and stepdaughter to that of permanent residents of the United States), an I-864 form (an affidavit showing that an immigrant has adequate means of financial support, required for most family-based immigrants), and an I-693 form (report of medical examination and vaccination record).[2]

---

[2] *See Application to Register Permanent Residence or Adjust Status*, U.S. Citizenship and Immigration Services (March 9, 2016); https://www.uscis.gov/i-485; *Affidavit of Support Under Section 213A of the Act*, U.S. Citizenship and Immigration Services (Mar. 9, 2016), https://www.uscis.gov/i-864; *Report of Medical Examination and Vaccination Record*, U.S. Citizenship and Immigration Services (Mar. 9, 2016), https://www.uscis.gov/i-693.

Immigration authorities scheduled an interview of Mr. Custodio's wife and her daughter for September 27, 2013, and Mr. Custodio obtained all necessary documentation for the interview. However, before the interview, Mr. Moore informed Mr. Custodio that the interview was canceled due to "staffing issues." In fact, Mr. Moore did not know the actual reason for the cancellation and had made no effort to determine the actual reason.

Mr. Custodio later learned from immigration authorities that the interview had been canceled because Mr. Moore failed to submit the necessary documents to them before the interview. Mr. Moore mistakenly believed that he had provided the necessary documentation, but he had not verified that the immigration authorities had the documents that were required.

Ultimately, the application for Mr. Custodio's wife and her daughter was denied due to the failure to provide the documentation prior to the date of the interview. Mr. Custodio received a letter notifying him of the denial and of the 30-day deadline for an appeal. Prior to the end of the 30 days, Mr. Custodio sent Mr. Moore a letter with all the necessary documentation. Mr. Custodio also attempted to contact Mr. Moore, but Mr. Moore did not respond. Mr. Moore did not file an appeal and did not inform Mr. Custodio of his failure to do so. Nor did he return Mr. Custodio's calls or otherwise respond to his requests for information about the case.

*Failure to Respond to Bar Counsel*

On March 26, 2014, Mr. Pasqualucci filed a complaint with the Commission about his experience with Mr. Moore. That same day, Bar Counsel sent a letter to

8

Mr. Moore informing him of the complaint and asking for a written response within 15 days. Mr. Moore did not respond. Bar Counsel sent him a second letter by certified mail, dated April 16, 2014, requesting a written response within 10 days. According to the postal return receipt, Mr. Moore's law office received the letter on April 17, 2014. On April 28, 2014, Bar Counsel received a letter from Mr. Moore dated April 24, 2014.

On May 6, 2014, Mr. Custodio filed a complaint with the Commission against Mr. Moore. Again, Bar Counsel sent Mr. Moore a letter the same day notifying him of the complaint and requesting a written response. Mr. Moore failed to respond in a timely manner. On June 23, 2014, Bar Counsel sent Mr. Moore a second letter requesting a written response within 10 days. On July 9, 2014, after receiving no response to the second letter, Bar Counsel sent a third letter informing Mr. Moore that a written response was required within 15 days. On August 5, 2014, after Mr. Moore still had not responded, Bar Counsel sent Mr. Moore a fourth letter asking for a written response to Mr. Custodio's complaint within seven days. According to the postal receipt, the August 5, 2014 letter was received by Mr. Moore's office on August 6, 2014. Mr. Moore still did not provide a timely response.

*Mental Health Evidence*

At the request of Bar Counsel, Mr. Moore underwent a psychiatric evaluation by Jeffrey S. Janofsky, M.D., on September 15, 2015. Dr. Janofsky testified at the hearing and his written report was submitted in evidence. According to Dr. Janofsky, Mr. Moore does not suffer from a psychiatric or personality disorder, but has an

9

"avoidant personality trait." As a result, Mr. Moore tends to avoid stressful situations, such as resolving issues with clients he perceives to be aggressive, assertive or demeaning toward him. Mr. Moore did not dispute Dr. Janofsky's analysis and the hearing judge found it to be "very credibl[e]."

During his testimony, Dr. Janofsky also recounted similar findings made by another psychiatrist, who had treated Mr. Moore as part of a conditional diversion agreement during his prior disciplinary matter in 2009, and by a licensed clinical social worker with whom Mr. Moore had met intermittently since 2011.

Mr. Moore testified – credibly, according to the hearing judge – that his personal or emotional problems are in part related to his being a survivor of domestic violence and abuse committed by his second wife. They were divorced six years before the Pasqualucci representation began, but she continued to engage in verbal abuse until 2014, when she pled guilty to a criminal charge in relation to the abuse.

## Discussion

The hearing judge concluded that Mr. Moore violated MLRPC 1.1, 1.3, 1.4, 1.16, 8.1(b), and 8.4(d). We review recommended conclusions of law without deference to the hearing judge. Maryland Rule 16-759(b)(1). For the reasons that follow, we agree with all of the hearing judge's conclusions of law.

10

*A.*     *Violations of MLRPC*

*MLRPC 1.1*

MLRPC 1.1 requires that an attorney "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

As the hearing judge noted, a failure to make required filings in a client matter demonstrates a lack of preparation and thoroughness necessary to provide competent representation. *Attorney Grievance Comm'n v. Guida*, 391 Md. 33, 54, 891 A.2d 1085 (2006). Although an attorney has adequate knowledge or skill to represent a client, the attorney violates MLRPC 1.1 if the attorney fails to apply that knowledge and skill as necessary. *Attorney Grievance Comm'n v. De La Paz*, 418 Md. 534, 553, 16 A.3d 181, 192 (2012). An unexplained failure to appear in court at a client's hearing is a complete failure of representation and violates MLRPC 1.1. *See Attorney Grievance Comm'n v. Harris*, 366 Md. 376, 403, 784 A.2d 516 (2001).

The hearing judge found that Mr. Moore "performed virtually no work in Pasqualucci's case and failed to file papers and pleadings on his behalf." Mr. Moore "knew as early as August 2009 that a[n] N-600 application was a viable option for his client, but did not file such application despite being instructed by the Immigration Court." The hearing judge determined that this failure, together with his unexplained failure to appear at the initial hearing when Mr. Pasqualucci was still in detention, demonstrated "an absence of thoroughness and preparation" in violation of MLRPC 1.1. The hearing judge also found that Mr. Moore's "representation of

11

Custodio was far below the minimum level of competency required from attorneys" because he "performed little to no services on behalf of Custodio." We agree with those conclusions.

*MLRPC 1.3*

MLRPC 1.3 states that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

Mr. Moore stipulated that he violated MLRPC 1.3 during his representation of Mr. Pasqualucci and the hearing judge agreed. So do we. It perhaps goes without saying that a lack of preparation or thoroughness that would violate MLRPC 1.1 also violates MLRPC 1.3. *See Attorney Grievance Comm'n v. McCulloch*, 404 Md. 388, 398, 946 A.2d 1009 (2008); *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 94, 753 A.2d 17 (2000). Accordingly, Mr. Moore's conduct that violated MLRPC 1.1 also violated MLRPC 1.3.

Mr. Moore did not stipulate to a violation of MLRPC 1.3 with respect to Mr. Custodio. However, the hearing judge concluded that Mr. Moore failed to keep Mr. Custodio adequately advised of the progress of his application and did not respond to Mr. Custodio's efforts to obtain information about the case. We agree that these facts display a lack of diligence, in violation of MLPRC 1.3.

*MLRPC 1.4*

MLRPC 1.4(a) requires an attorney to: promptly inform a client of any decision or circumstance with respect to which the client's informed consent is required; keep the client reasonably informed about the status of a matter; promptly comply with

12

reasonable request from the client for information; and consult with the client about any relevant limitation on the lawyer's conduct. In addition, a lawyer must explain a matter to a client to the extent reasonably necessary to permit the client to make an informed decision. MLRPC 1.4(b).

Mr. Moore stipulated that he violated MLRPC 1.4 during his representation of both Mr. Pasqualucci and the Custodio family. The hearing judge concluded that the evidence establishes those violations, and so do we.

Mr. Moore failed to communicate with Mr. Pasqualucci adequately throughout the representation and failed to communicate *at all* between the December 2010 hearing and the August 2011 hearing. Mr. Moore did not comply with Mr. Pasqualucci's reasonable requests for information when Mr. Pasqualucci repeatedly attempted to contact him by phone over several months.

Mr. Moore frequently failed to communicate with Mr. Custodio at all, such as when Mr. Moore failed to file an appeal on behalf of Mr. Custodio's wife and stepdaughter. When he did communicate with Mr. Custodio, his information was sometimes inaccurate, such as when he told Mr. Custodio that the immigration interview had been canceled due to "staffing issues" even though it had been canceled due to the failure to provide required documentation. This conduct – failing to communicate entirely, except occasional communications that were not even always correct – violated MLRPC 1.4.

*MLRPC 1.16*

MLRPC 1.16 states, in pertinent part:

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law;

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or

(3) the lawyer is discharged.

\* \* \* \* \*

(c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

Mr. Moore stipulated that he violated this rule in his representation of both Mr. Pasqualucci and the Custodio family. We agree with the hearing judge that the facts support such a conclusion.

14

Mr. Moore conducted research and gathered documentation related to Mr. Pasqualucci's childhood, family history, and education but did not provide the research or documentation to Mr. Pasqualucci at the conclusion of the representation. With respect to the Custodios, Mr. Moore collected a fee of $5,000 for his representation of Mr. Custodio, but did not return the unearned portion of the fee at the conclusion of the representation. As the hearing judge noted, a failure to return unearned fees and papers violates MLRPC 1.16. *Attorney Grievance Comm'n v. Heung Sik Park*, 427 Md. 180, 189, 46 A.3d 1153; (2012) *Attorney Grievance Comm'n v. Kremer*, 432 Md. 325, 336, 68 A.3d 862 (2013).

*MLRPC 8.1(b)*

MLRPC 8.1(b) provides, in pertinent part:

> [A] lawyer in connection with … a disciplinary matter, shall not: … (b) … knowingly fail to respond to a lawful demand for information from [a] disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

As the hearing judge noted, an attorney violates MLRPC 8.1(b) if the attorney does not answer requests from the Commission regarding a complaint in a potential disciplinary matter in a timely manner. *E.g.*, *Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 323, 44 A.3d 344 (2012); *Attorney Grievance Comm'n v. Queen*, 407 Md. 556, 565-66, 967 A.2d 198 (2009).

Mr. Moore stipulated that he violated MLRPC 8.1(b) with respect to the Commission's inquiries as to the complaints of both Mr. Pasqualucci and Mr.

15

Custodio. We agree with the hearing judge that his inaction in responding to those inquiries violated MLRPC 8.1(b).

*MLRPC 8.4(d)*

MLRPC 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Conduct that reflects negatively on the legal profession, such as neglect of clients, and that sets a bad example for the public at large is prejudicial to the administration of justice in violation of MLRPC 8.4(d). *Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 22, 922 A.2d 554 (2007); *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 83, 753 A.2d 17 (2000). *Attorney Grievance Comm'n v. Singleton*, 315 Md. 1, 6, 553 A.2d 222 (1989).

Mr. Moore stipulated that he violated MLRPC 8.4(d) in his representation of both Mr. Pasqualucci and the Custodio family. In addition to the facts underlying the violations of the other rules, he failed to attend Mr. Pasqualucci's August 10, 2009 hearing, which alone would be sufficient to violate MLRPC 8.4(d). In addition, his failure to perform work in relation to Mr. Custodio's case, while not returning Mr. Custodio's fee, reflects poorly on the legal profession. We agree with the hearing judge that the evidence establishes violations of MLRPC 8.4(d).

### B. *Mitigation*

The hearing judge found that two mitigating factors were present: personal or emotional problems, and remorse.[3]

---

[3] This Court has identified potential mitigating factors as follows:

16

As to the former, the hearing judge found:

> Moore's conduct appears to be a product of a sort of representational paralysis in the face of a difficult case rather than of dishonesty. Moore testified, credibly, that when he received Pasqualucci's complaint he felt overwhelmed and dumbfounded. As a result of feeling overwhelmed, Moore became depressed and hoped that the grievance would go away.

The hearing judge based this conclusion in part on the psychiatric evaluation by Dr. Janofsky, described above.

As to remorse, the hearing judge found that Mr. Moore "expressed genuine remorse for his conduct" at the disciplinary hearing. We defer to the hearing judge's ability to observe Mr. Moore's testimony at the hearing. In addition, we note that Mr. Moore began his oral argument before us with an apology and has stipulated to most of the underlying facts and alleged violations.

The hearing judge also observed that Mr. Moore's refund of the fee paid by Mr. Pasqualucci could be a mitigating factor. Given that the refund was not made until

---

> [a] absence of a prior disciplinary record; [b] absence of a dishonest or selfish motive; [c] personal or emotional problems; [d] timely good faith efforts to make restitution or to rectify consequences of misconduct; [e] full and free disclosure to disciplinary board or cooperative attitude toward proceedings; [f] inexperience in the practice of law; [g] character or reputation; [h] physical or mental disability or impairment; [i] delay in disciplinary proceedings; [j] interim rehabilitation; [k] imposition of other penalties or sanctions; [l] remorse; and [m] remoteness of prior offenses.

*See Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 178, 994 A.2d 928 (2010).

17

Mr. Pasqualucci filed a complaint with the Commission, we agree with the hearing judge that it is a "minor factor under the circumstances."

## C.  *Aggravation*

The hearing judge found clear and convincing evidence that four aggravating factors were present:  prior disciplinary offenses, a pattern of misconduct, vulnerability of the victims, and substantial experience in the practice of law.[4]  In particular, Mr. Moore had been reprimanded for similar violations in 2009.  The pattern of misconduct consisted of multiple violations arising out of inattention and failures to respond to two clients in immigration matters and to Bar Counsel when those clients filed complaints against him.  The hearing judge also noted that immigration clients are a vulnerable class of victims.  *See Attorney Grievance Comm'n v. Thomas,* 440 Md. 523, 558, 103 A.3d 629 (2014).  Finally, the hearing judge counted Mr. Moore's two decades of legal experience at the time of the violations as an aggravating factor.  The hearing judge also concluded that "the aggravating factors outweigh the mitigating factors" in this case.

---

[4] This Court has identified potential aggravating factors as:

> (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; and (j) indifference to making restitution.

*Attorney Grievance Comm'n v. Bleecker*, 414 Md. at 176-77.

## Sanction

Given that the facts and violations are largely undisputed, our primary task in this case is to determine the sanction. As this Court has frequently reiterated, the purpose of sanctions for violations of the MLRPC is to protect the public and deter future offenses rather than to punish the offending attorney. *Attorney Grievance Comm'n v. James*, 385 Md. 637, 665, 870 A.2d 229 (2005); *Attorney Grievance Comm'n v. Calhoun*, 391 Md. 532, 570, 894 A.2d 518 (2006).

Bar Counsel has recommended an indefinite suspension without specification of a minimum period of suspension. At oral argument, Mr. Moore asked us to remand the case to the Commission in the hope that he could negotiate a conditional diversion agreement with Bar Counsel under Maryland Rule 16-736.

We agree with Bar Counsel that the appropriate sanction is something less than disbarment. Although Mr. Moore occasionally said things to his clients that proved to be untrue, such as his inaccurate statement to Mr. Custodio that the September 27, 2013, interview was canceled because of "staffing issues," the hearing judge did not find the sort of intentional dishonesty that would ordinarily warrant disbarment. *See Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463 (2001).

Mr. Moore's misconduct is of a different character. Mr. Moore's violations are in the nature of serious neglect for which the Court has typically imposed an indefinite suspension. *See Attorney Grievance Comm'n v. Koven*, 361 Md. 337, 344-45, 761 A.2d 881 (2000) (collecting cases); *see also Attorney Grievance Comm'n v.*

*Gray*, 436 Md. 513, 523-26, 83 A.3d 786 (2014). Indefinite suspension seems appropriate in this case as well, for the following reasons.

On the one hand, there is no denying the seriousness of Mr. Moore's violations or of the consequences that followed. Mr. Pasqualucci qualified for American citizenship, but he was threatened with deportation from 2009 until 2013, when another attorney finally completed the process that Mr. Moore failed even to begin. The immigration status of Mr. Custodio's fiancé and daughter was likewise in limbo for two years because of Mr. Moore's inaction.

On the other hand, there appears to be no question that Mr. Moore's violations are at least partly due to psychological problems that he faces and has already begun to address. As the hearing judge found, Mr. Moore's violations are related to his inability to cope with stressful and emotionally difficult situations. Mr. Moore testified that he began seeing a new psychiatrist shortly before his disciplinary hearing in October 2015, and that he was learning strategies to be more proactive and involved in handling the situations that previously he avoided. In addition, he testified, and Bar Counsel never disputed, that for the "vast majority" of his clients, those who "don't possess ... threatening or intimidating personalities," he has "been well loved."

If this were Mr. Moore's first disciplinary proceeding, a reprimand or conditional diversion (which would allow Mr. Moore to continue to practice law) might be appropriate. However, an additional consideration is that Mr. Moore has already had an opportunity to address his personal issues while continuing to practice law.

20

The Court issued a reprimand for similar violations in 2009, evidently in the hope that he could resolve his issues while serving his clients. But his neglect of Mr. Pasqualucci's case followed almost immediately.

It appears necessary for Mr. Moore to stop practicing law while he resolves his personal issues. Conditional diversion is not appropriate because there still remains a significant possibility that he will neglect some clients in the future as he has neglected some clients in the past. The risk to future clients is unacceptable. Accordingly, Mr. Moore is indefinitely suspended from the practice of law.

We emphasize, however, that an indefinite suspension is indefinite, not permanent. Mr. Moore may apply for reinstatement under Maryland Rule 16-781. Before he may resume practicing law, Mr. Moore must now take some time to dedicate himself to learning how to face (rather than avoid) emotionally challenging situations, but when he has made sufficient progress, he may apply to return to the profession.

This Court has sometimes set a minimum duration that an attorney who has been indefinitely suspended for similar violations must sit out before the attorney may apply for reinstatement. *See, e.g.*, *Attorney Grievance Comm'n v. David*, 331 Md. 317, 324, 628 A.2d 178 (1993) (indefinite suspension with right to apply for reinstatement after six months). However, in this case, we decline to set a minimum length for this indefinite suspension, because we cannot say with any certainty how long it will take for Mr. Moore to make the necessary progress toward being able to handle intimidating or confrontational situations with techniques other than

21

avoidance. It may be soon, or it may be never. Mr. Moore may apply for reinstatement whenever he has made genuine and demonstrable progress that convincingly shows that he will not violate the MLRPC again. It will then be within this Court's discretion to grant or deny his application, with or without further proceedings or conditions. *See* Maryland Rules 16-781(g)-(j). In the meantime, however, he is indefinitely suspended from the practice of law.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THE COURT, INCLUDING THE COST OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761, FOR WHICH JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST RICHARD W. MOORE, JR.**