*Attorney Grievance Commission v. Benjamin Jeremy Woolery*
Misc. Docket AG No. 15, September Term 2016


**Attorney Discipline – Failure to Act with Competence and Diligence – Conduct Prejudicial to the Administration of Justice.** A reprimand is the appropriate sanction when an attorney appointed as the personal representative of an estate impulsively sold for $500 a tractor worth $10,000 stored by one of the beneficiaries of the estate on property owned by the estate without first ascertaining the ownership or approximate value of the tractor and, even though promptly informed of the tractor's ownership and value, failed to rectify his error because of the attorney's antipathy to the tractor's owner. MLRPC 1.1, 1.3, 8.4(a) & (d).

Circuit Court for Prince George's County
Case No. CAE16-27559
Argument: September 6, 2017

IN THE COURT OF APPEALS
OF MARYLAND

Misc. Docket AG No. 15

September Term, 2016

———————————————————

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

V.

BENJAMIN JEREMY WOOLERY

———————————————————

Barbera, C.J.,
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

———————————————————

Opinion by McDonald, J.

———————————————————

Filed: December 15, 2017

No one who has practiced law for any appreciable time can claim to have never made a mistake in that practice. A mistake in the practice of law is not necessarily professional misconduct. However, once aware of a mistake that harms another and given the opportunity to mitigate it, a lawyer who decides to do nothing may be guilty of misconduct.

Respondent Benjamin Woolery was appointed as personal representative for an estate that had a single asset – real property that had served as the decedent's home. There were five heirs – adult children of the decedent – with different ideas as to how to dispose of that property. In handling this difficult estate, Mr. Woolery made a mistake. In preparing the property for sale, he came upon a tractor that had been stored there by one of the adult children. Without determining the tractor's ownership or value, he impulsively sold it to an individual who happened to be present for what turned out to be a small fraction of the tractor's actual value.

Shortly thereafter, Mr. Woolery became aware of his mistake. Mr. Woolery was promptly informed of the ownership and value of the tractor. Given the opportunity to remedy the situation, Mr. Woolery chose not to do so, apparently out of personal animus toward its owner. We hold that the choice that Mr. Woolery made was misconduct that merits a reprimand.

# I

## Background

### A. *Procedural Context*

On June 24, 2016, the Attorney Grievance Commission ("Commission") through Bar Counsel filed a Petition for Disciplinary or Remedial Action with this Court against Mr. Woolery. The Commission charged Mr. Woolery with violations of the following Maryland Lawyers' Rules of Professional Conduct ("MLRPC"): 1.1 (Competence); 1.3 (Diligence); 1.7 (Conflict of Interest); 3.3 (Candor toward the Tribunal); and 8.4(a)-(d) (Misconduct).[1] On August 10, 2016, Mr. Woolery filed an answer to the petition in which he admitted most of the factual allegations, qualified his agreement with a few of them, and denied the conclusion of the petition that those facts constituted professional misconduct.

In accordance with Maryland Rule 19-722(a), we designated Judge Hassan A. El-Amin of the Circuit Court for Prince George's County to conduct a hearing concerning the alleged violations and to provide findings of fact and recommended conclusions of law.[2] The hearing took place over three days on December 7 - 8, 2016 and January 13, 2017. At

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct and recodified in Title 19 of the Maryland Rules. Because the conduct in question occurred prior to the recodification and because the alleged violations were charged and litigated under the prior codification, we refer to the MLRPC throughout this opinion.

[2] The Court originally assigned the matter to Judge Krystal Q. Alves. The Court rescinded that designation on August 29, 2016, and assigned the case to Judge El-Amin instead.

the hearing, the parties submitted a detailed stipulation of facts and introduced in evidence various documentary exhibits, including much of the record of Orphans' Court and District Court proceedings related to the charges against Mr. Woolery. Several witnesses, including Mr. Woolery, testified.

On March 20, 2017, the hearing judge issued a memorandum opinion in which he made detailed findings of fact and recommended conclusions of law. In his recommended conclusions of law, the hearing judge concluded that Mr. Woolery violated MLRPC 8.4(d). The hearing judge found that the Commission failed to prove by clear and convincing evidence that Mr. Woolery violated MLRPC 1.7, 3.3, and 8.4(a), (b), and (c). He also found in Mr. Woolery's favor for the most part with respect to the alleged violations of MLRPC 1.1 and 1.3.

Neither party filed exceptions to the hearing judge's findings of fact. Mr. Woolery filed exceptions to the hearing judge's conclusions of law to the extent that the hearing judge found violations of the MLRPC. This Court held oral argument on September 6, 2017.

## B.     *Facts*

Neither party contests the hearing judge's findings of fact and, accordingly, we treat those findings as established. Maryland Rule 19-741(b)(2)(A). We summarize those findings, along with the parties' stipulations and admissions, and other matters uncontested in the record.

3

*Mr. Woolery's Law Practice*

Mr. Woolery has been a member of the Maryland Bar since December 1988. During the period pertinent to this case, Mr. Woolery was a junior partner in the firm of McGill and Woolery in Upper Marlboro. Mr. Woolery has had substantial experience in the field of estates and trusts law.

*The Roy Chambers Estate*

On July 3, 2006, Roy L. Chambers, Jr., a resident of Prince George's County, passed away. His wife having predeceased him, Mr. Chambers was survived by five adult children: Carolyn Bowman, Mary Nicodemus, David Lee Chambers, Kenneth J. Chambers, and Thomas Chambers. Mr. Chambers had executed a will on January 23, 1985. According to Mr. Chambers' will, his five surviving children were to receive equal shares of his residuary estate. A few days after Mr. Chambers' death, the Register of Wills for Prince George's County opened the Estate of Roy L. Chambers, Jr., Estate No. 00000007907.

*Mr. Woolery becomes Personal Representative of the Estate*

The estate had a succession of personal representatives, including two stints by Mr. Woolery. Initially, one of Mr. Chambers' daughters – Carolyn Bowman – was appointed personal representative of the estate pursuant to the terms of the will. Mr. Woolery was appointed as a successor personal representative on December 13, 2007, until he was replaced by another attorney on April 28, 2008.[3] He was later reappointed as personal

---

[3] Mr. Woolery initially became involved with the estate at the behest of Mary Nicodemus, but decided to "bow out" after a few months as personal representative. Mr.

representative of the estate on March 18, 2010, and served until his final accounting in late 2016.

*The Property of the Estate*

When Mr. Woolery became personal representative of the estate for the second time, it had one asset – a parcel of real property that Mr. Chambers had owned free of any encumbrances at the time of his death. The property was located at 7301 Webster Lane, Fort Washington, Maryland 20744 ("the Webster Lane property"). The Webster Lane property consisted of 1.95 acres which was improved by a house, a garage with a residential apartment, and a large shed. Mr. Chambers and his wife had once resided in the house. Other than the Webster Lane property, the estate had no other assets.[4]

*The Family Dispute*

A rift among the surviving children hindered the efforts of Mr. Woolery and the prior personal representatives to dispose of the Webster Lane property and close the estate. The heirs had split into two groups. One group, which the hearing judge referred to as the "Bowman Camp," included Carolyn Bowman, Kenneth J. Chambers (who both lived in Michigan), and David Lee Chambers (who lived in Virginia). The Bowman Camp wanted to sell the property and split the proceeds of the property among all five children.

---

Woolery was succeeded by Darryl Kelly, who served until July 2, 2008, when Ara D. Parker was named as personal representative. When Ms. Parker asked to be removed from that position, citing "verbal abuse by two of the heirs," Mr. Woolery was appointed for the second time.

[4] A brokerage account titled jointly in the name of Mr. Chambers and one of his children had been disposed of by operation of law outside the estate.

The other group, referred to as the "Nicodemus Camp," included Mary Nicodemus and Thomas Chambers, who lived in Prince George's County and Charles County, respectively. The Nicodemus Camp contended that the Webster Lane property should be conveyed to Mary Nicodemus and Thomas Chambers because members of the Bowman Camp had already received the benefit of Mr. Chambers' brokerage accounts by operation of law outside of the estate.

Over the years after Mr. Chambers' death, the Nicodemus Camp made various efforts to procure the Webster Lane property, including suing the estate to force conveyance of the property, requesting dismissal of personal representatives, and objecting to accountings. Those efforts made it difficult for any of the personal representatives to resolve the estate.

*Mr. Woolery's Effort to Sell the Webster Lane Property*

When he became personal representative for the estate the second time in March 2010, Mr. Woolery intended to sell the Webster Lane property. He encountered several problems in this effort. In addition to the family discord over whether to sell the property at all, the estate had no other assets to finance the expense of preparing and advertising the property for sale. Mr. Woolery's effort to obtain a bank loan was rejected and he was unwilling to advance money to the estate himself.[5] Thus, for any professional services related to the property, Mr. Woolery would have to hire those professionals on a

---

[5] In an affidavit in lieu of accounting submitted to the Orphans' Court, Mr. Woolery indicated that he might make a loan to the estate at an interest rate of between 5% and 7%, but he apparently decided not to do so.

6

contingency basis. Moreover, by the time Mr. Woolery became personal representative for the estate the second time, Thomas Chambers had begun renting one or more of the buildings on the property to various tenants. While Thomas Chambers and the tenants thus helped maintain the property, their presence became an obstacle to Mr. Woolery's effort to dispose of it.

Initially, Mr. Woolery pursued the possibility of subdividing the property but ultimately dropped that idea. In September 2011, he obtained permission from the Orphans' Court to sell the Webster Lane property "as is" with a 10% commission. Over the next two and a half years, Mr. Woolery made a few visits to the property and entered into discussions with a realtor. At the hearing of this case, Mr. Woolery testified that, in light of the ongoing dispute among Mr. Chambers' adult children concerning disposition of the property, he had decided to "lay low in the grass." As the hearing judge noted, Mr. Woolery adopted a "go slow, stealth-like, indirect, and non-confrontational approach." Mr. Woolery felt that this approach was best, having developed some concern, based on statements of David Chambers and Carolyn Bowman, that Thomas Chambers might resort to violence, and therefore wished to avoid contact with Thomas Chambers.

*Mr. Woolery Visits the Property in April 2014 to Take Control*

In April 2014, Mr. Woolery decided to proceed with selling the Webster Lane property. The property had remained under the control of Thomas Chambers. A tenant named Earlmont Bell was then living in the garage apartment on the property. On April 25, 2014, Mr. Woolery visited the Webster Lane property to secure possession of the property by changing the locks and posting "no trespassing" signs. He spoke with Mr. Bell

7

that day and agreed to let him remain on the property for three months while a sale was accomplished.

Mr. Woolery had invited a locksmith to the property that day to change the locks. He also hoped to sell surveying equipment that had belonged to the decedent and that he believed might still be on the property. To that end, Mr. Woolery had invited an acquaintance, Andrew Duley, a surveyor who Mr. Woolery thought might be interested in purchasing that equipment. Mr. Duley invited another surveyor, Stephen Wilson, to accompany him. Mr. Woolery met Mr. Wilson for the first time that day.

*Mr. Woolery Discovers and Sells a Tractor and Backhoe for $500*

While at the Webster Lane property that day, Mr. Woolery found a Kubota tractor with an attached backhoe stored inside the large shed. Mr. Woolery had not seen the tractor and backhoe on the property before and did not know who owned it or how much it was worth. He asked Mr. Duley and Mr. Wilson if they were interested in purchasing the tractor and backhoe. Mr. Duley was not interested, but Mr. Wilson was. Mr. Woolery sold the tractor and backhoe to Mr. Wilson for $500 cash; Mr. Wilson arranged for a tow truck to remove it from the property.[6] Mr. Woolery did not create any documentation of the sale. Asked at the hearing why he had sold the tractor and backhoe in that manner, Mr. Woolery testified: "There [was] no real thought process at all. It [was] an automatic now let's get rid of that thing." After selling the tractor and backhoe, Mr. Woolery used cash from the

---

[6] At the hearing of this case, Mr. Wilson testified that he retained the tractor and backhoe until sometime in 2015.

8

sale to pay the locksmith for changing the locks on the Webster Lane property and to reimburse himself for the purchase of the "no trespassing" signs.

Unbeknownst to Mr. Woolery at the time, the tractor and backhoe actually belonged to Thomas Chambers, and not the estate. Thomas Chambers had purchased it in January 2004 for $15,200.00 and was temporarily storing it at the Webster Lane property while fixing a sinkhole there.

*Mr. Woolery is Informed of the Value and Owner of the Tractor*

Within a few days, Thomas Chambers learned that Mr. Woolery had sold his tractor and backhoe. Thomas Chambers promptly contacted Mr. Woolery concerning his desire for its return. In addition, on May 7, 2014, Thomas Chambers sent Mr. Woolery a copy of his purchase invoice for the tractor and backhoe, documenting his ownership and the price he had paid. Mr. Woolery took no action to recover the tractor and backhoe or to contact Mr. Wilson, either directly or through Mr. Duley. Mr. Woolery explained to Thomas Chambers that he would not attempt to obtain return of the tractor and backhoe, but that Thomas Chambers could file a claim in the Orphans' Court against the estate.

At the hearing of this case, Mr. Woolery testified that he believed that, because Thomas Chambers had been renting the Webster Lane property – an asset of the estate – and presumably collecting rent from the tenants, Thomas Chambers owed the estate money. Mr. Woolery's rationale for refusing to try to recover the tractor and backhoe was that any loss Thomas Chambers suffered from its sale was offset by the rent money he had collected with respect to the Webster Lane property which, in Mr. Woolery's view, rightfully belonged to the estate.

9

*Mr. Woolery Sells the Webster Lane Property*

In late summer 2014, Mr. Woolery sold the Webster Lane property to an entity called Wholesale Portfolio Partnership. The deed transferring the property was dated August 30, 2014 and showed a sale price of $166,000.

*Thomas Chambers sues Mr. Woolery*

In the meantime, Thomas Chambers had sued Mr. Woolery individually, in the District Court of Maryland for Prince George's County, to recover the value of the tractor and backhoe. *Thomas Chambers v. Benjamin Woolery*, Case No. 05-02-0010748-2014. The case went to trial in the District Court on October 21, 2014. At that trial, Mr. Woolery testified about how he had sold the tractor and backhoe. Mr. Woolery stated that he had "auctioned" it off to the "group of surveyors who were invited to the premises." On cross-examination, Mr. Woolery reiterated his description of an "auction" before a group of surveyors and suggested that their identities were unknown to him. He testified as follows:

Counsel: And once, – oh, who did you sell the tractor to?

Mr. Woolery: I don't know. It was group of surveyors who were invited to the premises and I was looking for cash dollars to meet the estate's obligations. I wasn't looking –

Counsel: You don't know the person's –

Mr. Woolery: – to take names and numbers.

Counsel: You don't know the person's name?

Mr. Woolery: No, sir.

Counsel: Don't know the person's phone number?

Mr. Woolery: No, sir.

As Mr. Woolery later admitted during Bar Counsel's investigation, he remembered Mr. Wilson's first name at some point and, at the very least, could have located him through Mr. Duley.

The District Court entered judgment in favor of Thomas Chambers in the amount of $9,700.00 – based on the court's estimate of the value of the tractor and backhoe when Mr. Woolery sold it. At the trial, Mr. Woolery repeatedly told the District Court that he had sold the tractor in his capacity "as a fiduciary," and insisted that any judgment be entered against him only in his capacity as personal representative of the estate. The District Court acceded to his request, effectively making it a judgment against the estate.

*Mr. Woolery Makes a Final Accounting*

In his final accounting as personal representative of the estate, Mr. Woolery referred to the presumed rental income received by Thomas Chambers, which he characterized "waste and defalcation," to completely offset Thomas Chambers' share of the estate as well as the judgment awarded to Thomas Chambers in the District Court action. In that accounting, Mr. Woolery requested – and was later awarded – approximately $25,000 in fees against the estate.

**II**

**Violations of MLRPC**

The hearing judge explicitly concluded that Mr. Woolery violated MLRPC 8.4(d), and also indicated, somewhat less explicitly, that Mr. Woolery's conduct failed to meet the standards of competence and diligence required by MLRPC 1.1 and 1.3 in a certain respect.

11

Before us, Mr. Woolery argues that the hearing judge did not find a violation of MLRPC 1.1 or 1.3 and excepts to the hearing judge's conclusion that he violated MLRPC 8.4(d).[7]

In an attorney discipline proceeding, we review the hearing judge's conclusions of law without deference. *Attorney Grievance Comm'n v. McDowell*, 439 Md. 26, 35 (2014). For the following reasons, we overrule Mr. Woolery's exception and conclude that he violated MLRPC 1.1, 1.3, 8.4(a), as well as 8.4(d).

*MLRPC 1.1 and 1.3*

The hearing judge's conclusions as to the alleged violations of MLRPC 1.1 and 1.3 are somewhat ambiguous. The hearing judge indicated that Mr. Woolery's conduct "in the main" did not violate MLRPC 1.1 or 1.3. However, the hearing judge went on to find that "the exception to this finding in [Mr. Woolery's] favor regarding [MLRPC] 1.1 and 1.3 relates only to [Mr. Woolery's] failure to attempt to recover the impulsively-sold tractor-and-backhoe." Thus, the hearing judge appears to have concluded that Mr. Woolery's decision not to remedy his impulsive decision to sell the tractor and backhoe violated those two rules. In any event, based upon the hearing judge's findings of fact, we conclude that Mr. Woolery's conduct violated both MLRPC 1.1 and 1.3.

MLRPC 1.1 requires that an attorney "provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and

---

[7] The hearing judge concluded that there was not clear and convincing evidence of violations of MLRPC 1.7 (conflict of interest), 3.3 (Candor toward the Tribunal), 8.4(b) (criminal act that reflects adversely on attorney's fitness), and 8.4(c) (dishonest conduct). Bar Counsel has not excepted to those conclusions and we do not further consider them.

preparation reasonably necessary for the representation." An attorney may have adequate knowledge or skill to represent a client, but a failure to apply that knowledge or skill as necessary violates MLRPC 1.1. *Attorney Grievance Comm'n v. Moore*, 447 Md. 253, 266 (2016).

The hearing judge found that Mr. Woolery had the knowledge and skill to handle this estate. Indeed, it was presumably Mr. Woolery's prior experience in estates and trusts matters that led the Orphans' Court to appoint him as personal representative of the estate. Despite that expertise, he made a mistake when he impulsively sold the tractor and backhoe without appraising it even informally or verifying that it belonged to the estate. Mr. Woolery compounded that error when he refused to correct it upon learning the true ownership and value of the tractor. We understand that this estate posed some particular difficulties for Mr. Woolery. However, the duty to resolve those difficulties was inherent in Mr. Woolery's appointment as personal representative – an assignment for which he claimed, and was awarded, a significant fee. It was his responsibility to do that work competently, regardless of its level of difficulty. Accordingly, we find that Mr. Woolery violated MLRPC 1.1.

MLRPC 1.3 provides that a lawyer must "act with reasonable diligence and promptness in representing a client." Conduct that violates MLRPC 1.1 will often also violate MLRPC 1.3. *See, e.g.*, *Attorney Grievance Comm'n v. Moore*, 447 Md. 253, 267 (2016).

Here, Mr. Woolery learned of his mistake almost immediately after making it. As the hearing judge found, if Mr. Woolery had attempted to recover the tractor and backhoe

13

at that time, he likely would have been able to do so as he could have located Mr. Wilson, who held onto the tractor and backhoe until 2015. By refusing to make a diligent attempt to recover the tractor and backhoe, Mr. Woolery exposed the estate to liability that could have been avoided. Accordingly, we find that Mr. Woolery violated MLRPC 1.3.

*MLRPC 8.4(a) & (d)*

Under MLRPC 8.4(a), it is professional misconduct for a lawyer to "violate or attempt to violate the [MLRPC]." Because Mr. Woolery violated MLRPC 1.1, 1.3, and 8.4(d), he necessarily also violated MLRPC 8.4(a). *Attorney Grievance Comm'n v. Phillips,* 451 Md. 653, 677 (2017).

Under MLRPC 8.4(d), it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Conduct violates MLRPC 8.4(d) when it falls "below the standards that the public normally expects of attorneys" and when an attorney compounds that misconduct by failing to take steps to correct it. *Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 174-75 (2010).

The hearing judge concluded that, once Mr. Woolery learned of his mistake in the sale of the tractor and backhoe, he had a responsibility to correct – or at least attempt to correct – that mistake. Mr. Woolery excepts to this conclusion, asserting that "had the tractor belonged to an innocent third party he would have immediately made every effort to effectuate its prompt return." Mr. Woolery argues that, because the tractor and backhoe belonged to Thomas Chambers and (in Mr. Woolery's view) Thomas Chambers owed the estate money, his refusal to attempt to recover the tractor was at worst a "debatable legal strategy" rather than professional misconduct.

14

We agree with the hearing judge that Mr. Woolery's failure to even attempt to recover the tractor and backhoe, after he learned that the estate did not own it, fell below the standard the public expects of attorneys and was prejudicial to the administration of justice. As the hearing judge noted, Mr. Woolery had no right to sell the tractor and backhoe in the first place, as it did not belong to the estate. Upon receiving notice of his mistake, Mr. Woolery had an obligation to the estate and Thomas Chambers to correct that mistake. In failing to do so, Mr. Woolery exposed the estate to unnecessary liability and ultimately a judgment against it. We agree with the hearing judge also that this was a "clear abuse of discretion" – *i.e.*, the discretion he exercised in carrying out his fiduciary responsibilities as personal representative of the estate. This conduct falls below the standard that we and the public expects of attorneys, and is thus prejudicial to the administration of justice. Accordingly, we overrule Mr. Woolery's exception and hold that his conduct violated MLRPC 8.4(d).

## III

### Sanction

As this Court has frequently reiterated, the purpose of a sanction in an attorney discipline case is not so much to punish the attorney, as it is to protect the public and deter future misconduct. *See, e.g.*, *Attorney Grievance Comm'n v. James*, 385 Md. 637, 665 (2005). To that end, the appropriate sanction must relate to the facts and circumstances of the particular case and be "commensurate with the nature and gravity of the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 537 (2003).

Bar Counsel has recommended a reprimand as appropriate discipline in this case. Consistent with his exception to any finding of misconduct, Mr. Woolery asks that we dismiss this matter without sanction. For the reasons explained below, we adopt Bar Counsel's recommendation.

There may be some basis for considering Mr. Woolery's initial decision to sell the tractor and backhoe without ascertaining whether it belonged to the estate and without determining its actual value as (in the words of the hearing judge) an "excusable mistake." Mr. Woolery was not aware that the tractor and backhoe belonged to Thomas Chambers rather than the estate, and may have assumed that his right to sell the Webster Lane property "as is" included the right to sell whatever he found on the property. Moreover, the sale was not for Mr. Woolery's own immediate personal gain. Mr. Woolery's decision to sell the tractor and backhoe on the spot to Mr. Wilson was apparently an attempt to generate cash to pay the locksmith and to reimburse himself for the estate's expenses related to securing the property without need for Mr. Woolery to advance funds to the estate.

Whether or not Mr. Woolery's decision to sell the tractor and backhoe on the spot was excusable, it was certainly a mistake. As Mr. Woolery repeatedly stated at the District Court trial, he was acting "as a fiduciary" – *i.e.*, acting with a duty to exercise a higher standard of care for the benefit of the estate and its beneficiaries[8] – when he sold the tractor

---

[8] *See* Maryland Code, Estates & Trusts Article, §7-101(a) ("A personal representative is a fiduciary. He is under a duty to settle and distribute the estate … with as little sacrifice of value as is reasonable …"); *Beyer v. Morgan State University*, 369 Md. 335, 351 (2002) ("A Personal Representative owes a duty to the beneficiaries of a will to act in the best interests of the Estate"). At times in his testimony, Mr. Woolery appeared

16

and backhoe. Even if Mr. Woolery truly believed that the tractor and backhoe belonged to the estate, it hardly seems prudent to impulsively sell it to the only person present who expressed any interest in it without making a minimal effort to determine its actual value. The result was that he sold it at a discount of 95% of the District Court's valuation of the equipment. Mr. Woolery's own testimony in the District Court trial reveals an understanding that his fiduciary responsibilities to the estate required more, as he characterized the sale to Mr. Wilson as an "auction" to a "group of surveyors" and suggested that, as a result, he was ignorant of the identity of the purchaser. At best, that testimony was a disingenuous effort to paint his error with a patina of prudent conduct.[9]

As the hearing judge concluded, even if Mr. Woolery had no malicious intent at the time of his initial mistake, his intent was less benign in the aftermath. When apprised of his mistake in a timely manner, Mr. Woolery chose not to remedy his failure to act in the best interests of the estate and its beneficiaries out of a personal animus against one of those beneficiaries. The hearing judge found that Mr. Woolery "displayed a contemptuous attitude" toward Thomas Chambers and allowed his "antipathy" for Thomas Chambers to "prevent him from doing what he was obligated to do for the estate." Moreover, the hearing

---

to regard his status as a fiduciary more as a shield against personal liability than as a call to higher duty.

[9] The hearing judge concluded that Mr. Woolery's testimony concerning the "auction" did not amount to perjury before the District Court because it was not material to the issues before the District Court, which did not depend on the manner in which Mr. Woolery sold the tractor and backhoe.

17

judge found that Mr. Woolery displayed "an unbefitting bravado" rather than "contrition for his errors."

In addition to the nature of the violations and the intent with which they were committed, we also consider any mitigating or aggravating circumstances.[10] In this case,

---

[10] The American Bar Association has recommended consideration of the following mitigating and aggravating factors:

*Mitigating factors*
(a)  absence of a prior disciplinary record;
(b)  absence of a dishonest or selfish motive;
(c)  personal or emotional problems;
(d)  timely good faith efforts to make restitution or to rectify consequences of misconduct;
(e)  full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f)  inexperience in the practice of law;
(g)  character or reputation;
(h)  physical disability;
(i)  mental disability or chemical dependency including alcoholism or drug abuse when:
    (1)  there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
    (2)  the chemical dependency or mental disability caused the misconduct;
    (3)  the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
    (4)  the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j)  delay in disciplinary proceedings;
(k)  imposition of other penalties or sanctions;
(l)  remorse; and
(m)  remoteness of prior offenses.

*Aggravating factors*
(a)  prior disciplinary offenses;
(b)  dishonest or selfish motive;
(c)  a pattern of misconduct;

the hearing judge found facts that support one mitigating factor: Mr. Woolery's character and reputation in the legal profession. Specifically, the hearing judge alluded to Mr. Woolery's history of service to the legal profession, his "outstanding reputation as an experienced practitioner in the area of estates and trusts and elder law," and his "excellent reputation for truth, veracity, and good character." In addition, we note that this is Mr. Woolery's first offense. There are no prior attorney disciplinary actions against him.

The hearing judge also found two aggravating factors: refusal to acknowledge the wrongful nature of the conduct and substantial experience in the practice of law. With respect to the first factor, the hearing judge found that Mr. Woolery failed to demonstrate an understanding that his refusal to even try to recover the tractor and backhoe was wrongful conduct. Regarding the second factor, at the time of his misconduct, Mr. Woolery had practiced law for more than 25 years. As the hearing judge noted, Mr. Woolery's experience in trusts and estates matters meant that he "could have, and should

---

(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.

*See* American Bar Ass'n, *ABA 2017 Compendium of Professional Responsibility Rules and Standards* (2017), §§9.22, 9.32 at pp. 463-64.

have taken a more objective approach to [Thomas Chambers] generally and in trying to retrieve [the tractor and backhoe]."

In our view, a reprimand in this case serves the primary purposes of the sanction – to protect the public and deter future offenses – without disrupting the attorney's practice of law. *Attorney Grievance Comm'n v. Queen*, 407 Md. 556, 571 (2009). A reprimand signals to the sanctioned attorney, other attorneys, and the public that the Court takes violations of the professional conduct rules seriously. *Attorney Grievance Comm'n v. Weiers*, 440 Md. 292, 310-11 (2014). This was apparently Mr. Woolery's first offense in the nearly 30 years he has now practiced law. While hostility toward Thomas Chambers may have motivated some of Mr. Woolery's conduct, the hearing judge found that Mr. Woolery did not otherwise act with a selfish or pecuniary motive. Moreover, as the hearing judge found, aside from his improper handling of the tractor and backhoe, Mr. Woolery reasonably performed his duties for the estate, despite its difficulties. Given all of this, in light of the hearing judge's findings as to Mr. Woolery's reputation and character, we have no reason to believe that his misconduct in this case is indicative of a pattern of past misconduct or predictive of future violations. Accordingly, we reprimand Mr. Woolery.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE 19-709(D), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST BENJAMIN JEREMY WOOLERY.**